IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JENNINGS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JANET NAPOLITANO, et al., <br><br> Defendants. | Case No. 18-cv-00268-CW <br><br> ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT <br><br> (Dkt. No. 33) |

On March 26, 2018, Defendants Janet Napolitano, President of the University of California (UC) Regents; Nicholas Dirks, former Chancellor of UC Berkeley (UCB); Carol Christ, current Chancellor of UCB; Stephen Sutton, Interim Vice Chancellor of Student Affairs Division at UCB; Joseph Greenwell, Associate Vice Chancellor for Student Affairs and Dean of Students at UCB; Margo Bennett, Chief of Police for the University of California Police Department (UCPD); Alex Yao, Operations Division Captain for UCPD; Leroy Harris, Patrol Lieutenant for UCPD; Marc DeCoulode, Services Unit Lieutenant for UCPD; and Joey Williams, Patrol Lieutenant for UCPD (collectively, the UCB Defendants) brought a motion to dismiss the First Amended Complaint (FAC).  Plaintiffs John Jennings, Katrina Redelsheimer, Trever Hatch and Donald Fletcher oppose the motion.  The Court found the motion to dismiss suitable for disposition on the papers.  Having reviewed the papers and the record, the Court GRANTS the UCB Defendants' Motion to Dismiss, with leave to amend.

BACKGROUND

I. Factual Background

Unless otherwise noted, the factual background is taken from the FAC, which is assumed to be true for purposes of Defendants' motion to dismiss.  Docket No. 8 (FAC).

Plaintiffs are four individuals who had planned to attend an event featuring Milo Yiannopolous, a conservative gay media personality and political commentator.  The event was hosted at UCB by a registered student organization.

UCB Defendants Napolitano and Bennett are sued in their official capacities only.  Defendant Dirk is sued in his individual capacity only.  The others (Sutton, Christ, Greenwell, Yao, Harris, DeCoulode and Williams) are sued in both their individual and official capacities.

In 2016 and 2017, Yiannopolous went on a speaking tour on college campuses.  FAC ¶ 47.  He was scheduled to attend UCB on February 1, 2017.  Id. ¶ 67.  Prior to the scheduled UCB event, there were violent protests on at least three university campuses on Yiannopolous' tour.  Id. ¶ 48.  Defendants were aware of the possibility of potential protestors at the Yiannopolous event.  Prior to the event, UCPD had disclosed a security plan to the public.  Id. ¶¶ 92 & 112.  Defendant Harris reached out to the Special Response Teams (SRT) at UC campuses for back-up in anticipation of protestors.  Id. ¶ 66.  Defendant DeCoulode briefed the 100 SRT officers present on crowd control methods. Id. ¶ 68.

On February 1, 2017, around 5:30 p.m., crowds began forming outside of Sproul Plaza by Martin Luther King Student Center (MLK

2

1   Center) at the UCB campus.  Id. ¶¶ 69-70.  Barricades were
2   erected in anticipation of the Yiannopolous event.  These
3   barricades were "arranged in a triangulated configuration" that
4   later on "corral[ed] people in Sproul Plaza in such a way as to
5   prevent them from escaping the area without first confronting
6   protestors."  Id. ¶ 85.  The barricades "enclose[d] the plaza and
7   deprive[d]" Plaintiffs Jennings and Redelsheimer of escape
8   access.  Id.  Around 6:00 p.m., several individuals tore down the
9   barricades formed and stormed the MLK Center.  Id.  Inside the
10  MLK Center, SRT officers watched as individuals were assaulted
11  outside.  Id. ¶ 74.  On several occasions, SRT officers attempted
12  to rescue victims who were being beaten and then retreated back
13  into the MLK Center.  Id. ¶ 75.  After some rescues, Defendant
14  Williams ordered SRT officers to keep the door closed and to stop
15  rescuing individuals.  Id. ¶ 76.

16      On February 1, 2017, around 6:30 p.m., Plaintiffs Jennings
17  and Redelsheimer arrived at Sproul Plaza.  Id. ¶ 91-93.  They
18  were physically assaulted by assailants, attacked with sticks and
19  pepper-sprayed.  Id. ¶¶ 95-96.  If the barricades had not been
20  erected as they were, Plaintiffs Jennings and Redelsheimer would
21  not have been pinned against the barricades and could have
22  escaped by a southern exit.  Id. ¶ 105.

23      Plaintiff Hatch arrived at Sproul Plaza around 6:40 p.m.  He
24  suffered welts and burns from pepper-spray.  Id. ¶ 117.
25  Plaintiff Hatch screamed for help; he was lifted over a second
26  barricade, and ultimately pulled into the MLK Center by a third-
27  party.  Id. ¶ 115.

28      Plaintiff Fletcher was at a bar when he learned that the

3

Yiannopolous event was cancelled. Id. ¶ 123. Fletcher and his friends were attacked on Bancroft Way where no police were present. Id. ¶ 125-26. Fletcher was transported to Highland Hospital in Oakland after suffering injuries in this attack. Id. ¶ 127.

II.  Procedural Background

Plaintiffs filed the FAC alleging claims under Title 28 U.S.C. § 1983. All Plaintiffs are alleging a violation of their due process rights under the Fourteenth Amendment (claim 1) against UCB Defendants. Plaintiffs Jennings, Redelsheimer and Hatch are alleging a violation of their right to assemble under the First Amendment (claim 3) against the UCB Defendants and the City of Berkeley.[1] All Plaintiffs also brought various state law claims against the UCB Defendants and are seeking injunctive and declaratory relief. Id. ¶¶ 212-20. On February 5, 2018, the Court related this case to Robles v. In the Name of Humanity, We Refuse to Accept a Fascist America et al, 17-cv-04864-CW (Robles). On February 26, 2018, Plaintiffs voluntarily dismissed their state law claims against UCB Defendants. Docket No. 29. On March 26, 2018, UCB Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint, attacking all claims against them. At issue against UCB Defendants now are Plaintiffs' § 1983 claims.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

---

[1] The claims against the City of Berkeley Defendants have been voluntarily dismissed. See Docket No. 40.

4

1   Civ. P. 8(a).  The plaintiff must proffer "enough facts to state
2   a claim to relief that is plausible on its face."  Ashcroft v.
3   Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
4   Twombly, 550 U.S. 544, 570 (2007)).  On a motion under Rule
5   12(b)(6) for failure to state a claim, dismissal is appropriate
6   only when the complaint does not give the defendant fair notice
7   of a legally cognizable claim and the grounds on which it rests.
8   Twombly, 550 U.S. at 555.  A claim is facially plausible "when
9   the plaintiff pleads factual content that allows the court to
10  draw the reasonable inference that the defendant is liable for
11  the misconduct alleged."  Iqbal, 556 U.S. at 678.
12      In considering whether the complaint is sufficient to state
13  a claim, the court will take all material allegations as true and
14  construe them in the light most favorable to the plaintiff.
15  Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049,
16  1061 (9th Cir. 2008).  The court's review is limited to the face
17  of the complaint, materials incorporated into the complaint by
18  reference, and facts of which the court may take judicial notice.
19  Id. at 1061.  However, the court need not accept legal
20  conclusions, including threadbare "recitals of the elements of a
21  cause of action, supported by mere conclusory statements."
22  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).
23      When granting a motion to dismiss, the court is generally
24  required to grant the plaintiff leave to amend, even if no
25  request to amend the pleading was made, unless amendment would be
26  futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.
27  Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining
28  whether amendment would be futile, the court examines whether the

5

complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

Plaintiffs now only allege two claims against the UCB Defendants: (1) all Plaintiffs are alleging a violation of their Fourteenth Amendment right to due process pursuant to § 1983 and (2) Plaintiffs Jennings, Redelsheimer, and Hatch are alleging a violation of their First Amendment right to associate pursuant to § 1983. Plaintiffs are seeking damages, along with declaratory and injunctive relief. The UCB Defendants move to dismiss these claims under Federal Rules of Civil Procedure, Rules 12(b)(1) and 12(b)(6).

I. Section 1983 Claims Against UCB Defendants in Their Official Capacities

    A. Damages Against UCB Defendants in Their Official Capacities Are Barred by the Eleventh Amendment

UCB Defendants argue that Plaintiffs are barred from asserting § 1983 claims against them in their official capacities as state officials. Plaintiffs do not refute this in their opposition, and thus appear to concede it. State officials sued in their official capacities are considered "arms of the State" and are immune under the Eleventh Amendment from suits brought in federal court because they are not "persons" subject to suit under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). The Ninth Circuit has ruled on multiple occasions that the "Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment

6

1   purposes, and therefore is not a 'person' within the meaning of
2   section 1983." Armstrong v. Meyers, 964 F.2d 948, 949–50 (9th
3   Cir. 1992). See also BV Eng'g v. Univ. of California, Los
4   Angeles, 858 F.2d 1394, 1395 (9th Cir. 1988) (quoting Jackson v.
5   Hayakawa, 682 F.2d 1344, 1360 (9th Cir. 1982)) (holding that the
6   Regents is "considered to be an instrumentalit[y] of the state,
7   and therefore enjoy[s] the same immunity as the state of
8   California") (internal quotation marks and citations omitted).
9       Here, UCB Defendants Napolitano, Sutton, Greenwell, Christ,
10  Bennett, Yao, Harris, DeCoulode and Williams were all sued in
11  their official capacities in their roles as UC officials and thus
12  are immune from damages under the Eleventh Amendment. See
13  Robles, 17-cv-04864, Motion to Dismiss Order at 7-9 (Sept. 4,
14  2018). Because amendment would be futile, Plaintiffs' § 1983
15  claims seeking damages against UCB Defendants in their official
16  capacities are dismissed with prejudice without leave to amend.
17      B.   Ex Parte Young Injunctive Relief
18      Defendants argue that Plaintiffs lack standing to seek
19  injunctive relief on Plaintiffs' § 1983 claims. Specifically,
20  Defendants argue that Plaintiffs have not alleged facts that show
21  that there is a "sufficient likelihood" that Plaintiffs will be
22  wronged in a similar way again. While the Eleventh Amendment
23  bars lawsuits against individuals in their official capacities
24  acting as an arm of the state, there is a limited exception
25  allowing for claims for prospective injunction relief against
26  state actors in their official capacities if there is a
27  likelihood that the plaintiffs will be injured in a similar
28  fashion again. Plaintiffs allege that they intend to visit the

7

UCB campus again when "controversial events are held in the future" and are "fearful they may be harmed again." FAC ¶¶ 148, 167 & 213. This is a conclusory assertion unsupported by any factual statements that there is a likelihood of this harm occurring again. There are no factual allegations that there will be another controversial event held at UCB, let alone one in Sproul Plaza using the barricades that allegedly prevented Plaintiffs from escaping. There are no allegations that there is a policy to set up barricades again that would prevent individuals from escaping, nor that violent protesters will show up with baseball bats and pepper spray again. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (the "speculative nature" of "future injury" that plaintiff may be arrested again in the future and subject to a chokehold is insufficient to establish "any real or immediate threat that the plaintiff will be wronged again"). Accordingly, Plaintiffs' claim for injunctive relief must be dismissed. Because amendment may not be futile, the Court grants Plaintiffs leave to amend this claim against Defendants.

II. Section 1983 Claims Against UCB Defendants in Their Individual Capacities

   A. Plaintiffs' Fourteenth Amendment Claim

Plaintiffs allege that Defendants Dirks, Christ, Sutton, Greenwell, Yao, Harris, DeCoulode and Williams violated Plaintiffs' due process rights under the Fourteenth Amendment due to a state-created danger. "[M]embers of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties" unless a "special

relationship" between the state and the plaintiffs exists because the plaintiffs are within the state actor's custody, or there is a danger created by the state. Johnson v. Seattle, 474 F.3d 634, 639 (9th Cir. 2007). To state a claim under the state-created danger exception, a plaintiff must allege that "an affirmative act by the [defendant] [left] the plaintiff in a more dangerous position than the one in which they found him." Estate of Amos ex rel. Amos v. City of Page, Arizona, 257 F.3d 1086, 1091 (9th Cir. 2001) (original emphasis and citations omitted). Moreover, a plaintiff must also plead that the defendants were deliberately indifferent to a known danger that was created by the conduct. L.W. v. Grubbs, 92 F.3d 894, 896 (9th Cir. 1996).[2]

### 1. Plaintiffs Sufficiently Allege that the Barricades Constituted a State-Created Danger

Plaintiffs argue that they meet the state-created danger exception because UCB Defendants affirmatively created a danger by (a) directing police to vacate Sproul Plaza which allowed the rioters to come into that plaza; (b) erecting barricades that prevented individuals from leaving Sproul Plaza; (c) locking and barricading the doors to the MLK Center and not aiding individuals in Sproul Plaza; (d) issuing "feckless disbursal [sic] orders" and "hollow threats of arrest" which aggravated the

---

[2] Defendants argue that the applicable standard here should not be deliberate indifference, but rather a "purpose to harm" because circumstances here were similar to violent prison riots requiring snap judgment decisions. Motion at 10-12. However, unlike prison riots, these violent riots could have and indeed were anticipated by Defendants. Thus, the deliberate indifference standard is applicable. Furthermore, the Ninth Circuit has also held that the deliberate indifference standard is appropriate in context of rallies or protests that may turn violent. See Hernandez v. City of San Jose, No. 17-15576, Slip Op. at 13 (9th Cir. July 27, 2018).

crowds and made the rioters more violent; and (e) giving false assurances of safety upon which Plaintiffs relied. Opposition at 9-11.

Plaintiffs have failed to specify which actors made dispersal orders, threats of arrest and false assurances. See FAC ¶¶ 82-83; see also id. ¶¶ 92 & 112. For this reason, Plaintiffs' allegations of these purported affirmative actions do not survive Defendants' motion to dismiss.

Plaintiffs have alleged which specific Defendants committed the other purported affirmative actions. Plaintiffs specified that Defendant DeCoulode ordered the SRT officers to retreat from Sproul Plaza. FAC ¶ 69. The FAC also alleges that Defendant Williams ordered officers to lock the doors into the MLK Center and not to rescue any more individuals. Id., ¶ 76. The FAC also alleges that Defendants Harris and Yao had ordered the barricades to be erected. Id., ¶¶ 50-51.

Of these purported affirmative actions, only erecting barricades was an affirmative action that may have created a danger for Plaintiffs. Plaintiffs allege that erecting the barricades prevented an alternative safe exit point from the southern end of Sproul Plaza and thus placed them in a worse position than they otherwise would have been. These allegations are sufficient to allege a state-created danger.

The other allegations do not show affirmative actions by Defendants that "placed [plaintiffs] in danger that [they] otherwise would not have faced." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062-63 (9th Cir. 2006). Plaintiffs allege that the order to vacate caused protesters to swarm Sproul Plaza,

1 allowing the riot to become more dangerous.  This did not place
2 Plaintiffs in a more dangerous situation.  Plaintiffs' FAC
3 alleges that protesters intended to enter Sproul Plaza.  See FAC
4 ¶¶ 56-57.  Thus, Defendant DeCoulode's order for SRT officers to
5 vacate Sproul Plaza did not expose Plaintiffs "to a danger which
6 he or she would not have otherwise faced."  Hernandez, No. 17-
7 15576, at 17 (citing Henry A. v. Willden, 678 F.3d 991, 1002-03
8 (9th Cir. 2012)); compare with id. at 16 ("[T]he Officers'
9 affirmative acts created a danger the [plaintiffs] otherwise
10 would not have faced.  Being attacked by . . . protesters was
11 only a possibility when [plaintiffs] arrived . . . .  The
12 Officers greatly increased that risk of violence when they
13 shepherded and directed the [plaintiffs] towards the unruly mob
14 waiting outside . . . .").

15 Similarly, Plaintiffs' allegations do not show that
16 Defendant Williams' order that SRT officials lock down the MLK
17 Center and fail to aid those in need placed Plaintiffs in a more
18 dangerous situation.  While locking doors to the MLK Center may
19 be an affirmative action, Plaintiffs have not alleged how this
20 created a more dangerous situation for Plaintiffs.  For example,
21 there are no allegations that locking the doors to the MLK Center
22 prevented an alternative safe escape route as Plaintiffs allege
23 the barricades did.  At most, Plaintiffs allege the dangerous
24 situation was created when SRT officials did not affirmatively go
25 back into Sproul Plaza to help victims but rather observed the
26 violence from the MLK Center.  FAC ¶¶ 140(h)-(k).  These are
27 inactions by Defendants.  See Pinder v. Johnson, 54 F.3d 1169,
28 1176 n* (4th Cir. 1995) ("While it is true that inaction can

11

often be artfully recharacterized as 'action,' courts should resist the temptation to inject this alternate framework into omission cases by stretching the concept of 'affirmative acts' beyond the context of immediate interactions between the officer and the plaintiff.").

Thus, only Defendants Harris and Yao's affirmative action to erect barricades may have been a state-created danger.

### 2. Plaintiffs' Have Not Pled Defendants' Deliberate Indifference to the Barricades' Danger

Because Plaintiffs have pled sufficient facts alleging a state-created danger, the next step is to determine whether Defendants Harris and Yao were deliberately indifferent to the danger. Plaintiffs have not alleged facts to show that Defendants Harris and Yao were deliberately indifferent when they directed the barricades to be erected. Plaintiffs argue that these Defendants knew there was a known or obvious danger because of prior riots that occurred at other Yiannopolous events and prior controversial events held at UCB. However, the question is not whether these Defendants were aware of the potential dangerous situations; rather, the question is whether these Defendants knew that the affirmative conduct of setting up barricades would lead to the dangerous situation of preventing individuals from leaving, but nevertheless deliberately proceeded in spite of knowing of this danger.

The Court finds Hernandez v. City of San Jose, 241 F. Supp. 3d 959 (N.D. Cal. 2017), persuasive and applicable here. In Hernandez, the plaintiffs attended a controversial event for then-Presidential nominee Donald Trump, resulting in violent

12

riots. 241 F. Supp. at 965. Hernandez alleged that the city and police department's crowd control policy was insufficient and that the defendants were deliberately indifferent to the plaintiffs' safety. Id. Hernandez also claimed that the police officers on duty that night directed himself and others through a single exit which put them in danger. Id. The Hernandez court dismissed the plaintiff's Fourteenth Amendment claim as to the chief of police. The court held that allegations that the chief of police devised a crowd-control plan that would cause harm to the plaintiffs and that the police chief had known that violence had erupted at previous Trump events were not sufficient to survive the motion to dismiss. Id. at 969. The court noted that "the question is whether [the police chief] knew the adoption of the crowd-control plan increased the risk of violence to the point that Plaintiffs would have been better off had the police not come up with any operational plan whatsoever." Id. at 971 (original emphasis and citation omitted). But the Hernandez complaint did not allege that at the time the crowd-control plan was devised, the police chief "had any reason to believe that such a plan would increase the risk of harm to Plaintiffs." Id. at 971-72. "The FAC [did] not allege that [the police chief] knew where anti-Trump protesters were likely to be located, nor does the FAC allege that [the police chief] knew that Plaintiffs would be safer if they were allowed to leave in any direction." Id. "Additionally, the FAC [did] not allege that [the police chief] knew that the crowd-control plan was so defective that Plaintiffs would be better off if police simply had no plan whatsoever." Id. Thus, there were not sufficient allegations of

13

actual knowledge or willful blindness to the danger of the crowd-control plan. Id. at 972.

Here, Plaintiffs' allegations that Defendants Harris and Yao enacted the plan to erect barricades fail for the same reasons addressed in Hernandez. There are no factual allegations that when Defendants Harris and Yao created the plan for the Yiannopolous event, they knew it would trap individuals and prevent exit from Sproul Plaza. The conclusory and formulaic recitations that UCB Defendants "knew that the crowd control plan the UC Berkeley Defendants adopted was so defective that Plaintiffs . . . would have been better off if the UC Berkeley Defendants had no plan whatsoever" is not supported by any factual allegations. See FAC ¶ 144. This is conclusory and does not survive a motion to dismiss. See Iqbal, 556 U.S. at 678.

Separately, because Plaintiff Fletcher did not enter Sproul Plaza and was attacked on Bancroft Way instead, he was not affected by the barricades, or any of the Defendants' conduct. Plaintiff Fletcher has alleged no additional facts that any of the Defendants took affirmative actions to place him in a state-created danger. Plaintiff Fletcher's Fourteenth Amendment claim against Defendants fails for this independent reason.

Because Plaintiffs have not alleged sufficient facts to show that any of the UCB Defendants affirmatively, and with deliberate indifference, directed action that caused Plaintiffs to be in a state-created danger, Plaintiffs' Fourteenth Amendment claim against all UCB Defendants is dismissed. Because this is the first Motion to Dismiss, the Court will grant Plaintiffs leave to amend to cure these deficiencies, if they can truthfully do so.

14

B.   Plaintiffs' First Amendment Claim

Plaintiffs' allegations do not amount to a claim for violation of the First Amendment pursuant to § 1983.  Plaintiffs' theory is that UCB Defendants' "Crowd Control Policy abuts upon sensitive areas of basic First Amendment freedoms."  FAC ¶ 137.  Plaintiffs essentially claim that Defendants infringed Plaintiffs' freedom to associate with one another by failing to restrain third-party hecklers.  Id. ¶ 170-72.

To state a claim for infringement of free assembly, "a plaintiff must [plead] that the [defendant] imposed a serious burden upon, or affected in a significant way, or substantially restrained the plaintiff's ability to associate."  Mandel v. Bd. Of Trustees of California State Univ., 17-cv-3511-WHO, 2018 WL 1242067, at *10 (N.D. Cal. Mar. 9, 2018) (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1033 (9th Cir. 2004)) (internal alteration marks omitted).  Similar to the defective pleadings in Robles, Plaintiffs here have not pled affirmative acts by the UCB Defendants that interfered with Plaintiffs' First Amendment right to associate.  See Robles Motion to Dismiss Order at 9-10.  Instead, their allegations are that UCB Defendants enforced a defective policy as third parties interfered with their rights.  However, the First Amendment does not require the individual Defendants to protect Plaintiffs against the actions of others.  See Haitian Refugee Ctr., Inc. v. Baker, 953 F.2d 1498, 1513 (11th Cir. 1992) (holding that "associational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate); see also DeShaney v. Winnebago Cnty. Dep't of Soc.

15

Servs., 489 U.S. 189, 195 (1989) (The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.").

Here, Plaintiffs have asserted no separate factual allegations of how Defendants' actions affirmatively interfered with their First Amendment right to assemble. Accordingly, Plaintiffs' First Amendment claim against all UCB Defendants is dismissed. Since it is not clear that amendment would be futile, the Court grants Plaintiffs leave to amend their claim against UCB Defendants in their individual capacities to cure these deficiencies if they can truthfully do so.

III. Qualified Immunity

Because the Court finds that Plaintiffs have failed to allege sufficient facts to establish liability under § 1983, the Court need not address whether UCB Defendants are entitled to qualified immunity.

IV. Plaintiffs' Claim for Punitive Damages

Plaintiffs are not entitled to seek punitive damages against UCB Defendants in their official capacities. Punitive damages are not available in suits under § 1983 against government entities. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 785 (2000) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)). State officials acting in their official capacities are also immune from punitive damages. Will, 491 U.S. at 58; Mitchell v. Dupnik, 75 F.3d 517, 527 (9th

16

Cir. 1996). Thus, to the extent Plaintiffs are seeking punitive damages against UCB Defendants in their official capacities as state officials, the Eleventh Amendment bars such a claim.

Punitive damages are available against state official defendants in their individual capacities. Smith v. Wade, 461 U.S. 30 (1983). To the extent that Plaintiffs are seeking punitive damages against UCB Defendants in their individual capacities, Plaintiffs have not alleged sufficient facts that UCB Defendants' actions amount to reckless or callous disregard for Plaintiffs' rights, since they have failed to allege facts with sufficient particularity of a cognizable legal claim. Thus, Plaintiffs' punitive damage claim against UCB Defendants in their individual capacities also fails.

## CONCLUSION

The Court GRANTS the UCB Defendants' motion to dismiss (Docket No. 33) and grants Plaintiffs leave to amend claims against Defendants in their individual capacities, and their claim against Defendants in their official capacities for Ex Parte Young injunctive relief. Plaintiffs shall have twenty-one days to file their Second Amended Complaint if they can cure the defects addressed in this Order.

IT IS SO ORDERED.

Dated: November 14, 2018

CLAUDIA WILKEN
United States District Judge