BRADLEY S. PHILLIPS (SBN 85263)
brad.phillips@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

BRYAN H. HECKENLIVELY (SBN 279140)
bryan.heckenlively@mto.com
ELIZABETH A. KIM (SBN 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants
JANET NAPOLITANO, NICHOLAS B.
DIRKS, CAROL T. CHRIST, STEPHEN C.
SUTTON, JOSEPH D. GREENWELL,
MARGO BENNETT, ALEX YAO, LEROY
HARRIS, MARC DECOULODE, AND JOEY
WILLIAMS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JOHN JENNINGS, et al., | Case No. 18-CV-00268-CW |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION OF UNIVERSITY OF CALIFORNIA DEFENDANTS TO DISMISS THE SECOND AMENDED COMPLAINT (RULES 12(b)(1) & 12(b)(6))** |
| vs. | |
| JANET NAPOLITANO, et al., | |
| Defendants. | Judge:   Hon. Claudia Wilken |
| | Date:    March 19, 2019 |
| | Time:    2:30 p.m. |

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3   NOTICE OF MOTION AND MOTION TO DISMISS ..................................................1

4   STATEMENT OF RELIEF SOUGHT ........................................................................1

5   MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

6   I.      INTRODUCTION.............................................................................................1

7   II.     BACKGROUND...............................................................................................2

8   III.    LEGAL STANDARD .......................................................................................5

9   IV.     ARGUMENT ....................................................................................................6

10          A.      Plaintiffs Lack Standing to Pursue Their Claims for Injunctive Relief ...................6

11          B.      Plaintiffs Fail to Allege Facts Sufficient to State a Due Process or First
                    Amendment Claim ...............................................................................7

12

13                 1.      UC Defendants are not liable for any failure to protect Plaintiffs
                           from third-party violence or interference with Plaintiffs' rights...................7

14                 2.      Plaintiffs fail to allege facts sufficient to state a claim under the
                           state-created danger exception .................................................9

15

16                         (a)     Plaintiffs do not allege any "affirmative conduct" by the UC
                                   Defendants..................................................................10

17                         (b)     Plaintiffs fail to allege the UC Defendants acted with the
                                   requisite mental state ....................................................12

18

19                 3.      Plaintiffs fail to plead a freedom-of-association claim ..............................15

20          C.      Plaintiffs' Claims Against UC Defendants in Their Personal Capacities
                    Must Be Dismissed...........................................................................16

21                 1.      Plaintiffs do not allege facts sufficient to show that UC Defendants
                           acted in their personal capacities...............................................16

22

23                 2.      The UC Defendants are entitled to qualified immunity from
                           damages claims ..........................................................................17

24          D.      Plaintiffs Fail to State a Claim for Punitive Damages.............................................19

25  V.      CONCLUSION ................................................................................................19

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. Univ. of N. Fla.,*
   39 F.3d 290 (11th Cir. 1994) (per curiam) ..............................................................19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................6

*Burns v. Cnty. of King,*
   883 F.2d 819 (9th Cir. 1989)......................................................................................15

*Citizens for Health v. Leavitt,*
   428 F.3d 167 (3d Cir. 2005) ........................................................................................8

*City of Los Angeles v. Lyons,*
   46 U.S. 95 (1983) ............................................................................................1, 2, 6, 7

*Clark v. Ca. Dep't of Forestry & Fire Prot.,*
   212 F. Supp. 3d 808 (N.D. Cal. 2016) .......................................................................16

*Comm. for Immigrant Rights v. Cty. of Sonoma,*
   644 F. Supp. 2d 1177 (N.D. Cal. 2009) .....................................................................17

*Cousins v. Lockyer,*
   568 F.3d 1063 (9th Cir. 2009)......................................................................................5

*DeShaney v. Winnebago County Department of Social Services,*
   489 U.S. 189 (1989) ........................................................................................ 7, passim

*Dunn v. Wash. Cnty. Hosp.,*
   429 F.3d 689 (7th Cir. 2005)........................................................................................8

*Felber v. Yudof,*
   851 F. Supp. 2d 1182 (N.D. Cal. 2011) .......................................................................8

*Gant v. Cnty. of Los Angeles,*
   772 F.3d 608 (9th Cir. 2014)........................................................................................5

*Hafer v. Melo,*
   502 U.S. 21 (1991) .....................................................................................................16

*Haitian Refugee Ctr., Inc. v. Baker,*
   953 F.2d 1498 (11th Cir. 1992)....................................................................................8

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ...................................................................................................17

1
2

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

3
4
*Hernandez v. City of San Jose*,
241 F. Supp. 3d 959 (N.D. Cal. 2017) .......................................................10, 12, 13, 14

5
*Hernandez v. City of San Jose*,
897 F.3d 1125 (9th Cir. 2018)...................................................................7, 11, 12, 14

6
7
*Hope v. Pelzer*,
536 U.S. 730 (2002) ...............................................................................................17

8
9
*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003).................................................................................5

10
*Johnson v. City of Seattle*,
474 F.3d 634 (9th Cir. 2007).....................................................................7, 11, 12, 18

11
12
*Estate of Kalama v. Jefferson County*,
No. 3:12-cv-01766—SU, 2015 WL 464891 (D. Or., Feb. 4 2015) ....................................12, 13

13
14
*Kennedy v. City of Ridgefield*,
439 F.3d 1055 (9th Cir. 2006)..............................................................................9, 13

15
*Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*,
616 F.3d 963 (9th Cir. 2010)...................................................................................17

16
17
*L.W. v. Grubbs*,
92 F.3d 894 (9th Cir. 1996)..............................................................................13, 14

18
19
*Lacey v. Maricopa*,
693 F.3d 896 (9th Cir. 2012)....................................................................................15

20
*Cnty. of Sacramento v. Lewis*,
523 U.S. 833, 853 (1998) ........................................................................................14

21
22
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................7

23
24
*MacEachern v. City of Manhattan Beach*,
623 F. Supp. 2d 1092 (C.D. Cal. 2009)....................................................................14

25
*Melendez-Garcia v. Sanchez*,
629 F.3d 25 (1st Cir. 2010) .....................................................................................18

26
27
*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008).................................................................................5

28
*Nelson v. Streeter*,
16 F.3d 145 (7th Cir. 1994).....................................................................................9

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Patel v. Kent Sch. Dist.*,
648 F.3d 965 (9th Cir. 2011)...................................................................................12

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...............................................................................................17

*Peralta v. Cal. Franchise Tax Bd.*,
124 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................................16

*Pietrangelo v. Alvas Corp.*,
664 F. Supp. 2d 420 (D. Vt. 2009), *aff'd*, 487 F. App'x 629 (2d Cir. 2012) ...........8

*Porter v. Osborn*,
546 F.3d 1131 (9th Cir. 2008)................................................................................13

*Reno v. Am. Civil Liberties Union*,
521 U.S. 844 (1997) .................................................................................................9

*Saucier v. Katz*,
533 U.S. 194 (2001) ...............................................................................................17

*Scott v. Cal. State Lotto*,
19 F.3d 1441 (9th Cir. 1994)..................................................................................16

*Smith v. Wade*,
461 U.S. 30 (1983) .................................................................................................19

*Steshenko v. Gayrard*,
44 F. Supp. 3d 941 (N.D. Cal. 2014) .....................................................................16

*Tater-Alexander v. Amerjan*,
No. 1:08-cv-00372 OWW SMS, 2011 WL 319012 (E.D. Cal. Jan. 28, 2011)...........8

*Whitley v. Albers*,
475 U.S. 312 (1986) ...............................................................................................14

*Young Ams. Found. v. Covino*,
No. 2:16-CV-03474 (C.D. Cal. Dec. 12, 2016), Dkt. No. 87..................................8

**STATE STATUTES**

Cal. Civ. Code § 3294 ...................................................................................................19

**FEDERAL RULES**

Rule 12(b)(1) ...................................................................................................................1

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Rule 12(b)(6) ..........................................................................................................................1, 5

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................................................ 5, passim

Fourteenth Amendment ................................................................................................. 1, passim

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on March 19, 2019, at 2:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Claudia Wilken, located at 1301 Clay Street, Oakland, California, Defendants (all current or former officials of the University of California) Janet Napolitano, Nicholas B. Dirks, Carol T. Christ, Stephen C. Sutton, Joseph D. Greenwell, Margo Bennett, Alex Yao, Leroy M. Harris, Marc DeCoulode, and Joey Williams (the "UC Defendants") will and hereby do move to dismiss Plaintiffs' Second Amended Complaint ("SAC"). This motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and papers on file, and such other matters as may be presented to this Court.

## STATEMENT OF RELIEF SOUGHT

UC Defendants seek an order pursuant to Rule 12(b)(1) and Rule 12(b)(6) dismissing with prejudice the Second Amended Complaint and each of its causes of action for lack of jurisdiction and failure to state a claim for relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court granted the UC Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC") on November 14, 2018. Dkt. 53 ("MTD Order"). The Court granted Plaintiffs leave to amend their (1) claim for injunctive relief against the UC Defendants in their official capacities; and (2) § 1983 claims under the Fourteenth Amendment against the UC Defendants in their individual capacities. *Id.* at 17. Despite being afforded an opportunity to "cure these deficiencies if they can truthfully do so," *id.* at 16, Plaintiffs still fail to plead facts sufficient to state a claim. As Plaintiffs have demonstrated that amendment would be futile, Plaintiffs' claims against the UC Defendants should be dismissed with prejudice.

*First*, Plaintiffs fail to set forth any factual allegations demonstrating that there is "any real or immediate threat that plaintiff[s] will be wronged again." *City of Los Angeles v. Lyons*, 46 U.S. 95, 111 (1983). Plaintiffs' "new" allegation that it is "reasonable to expect that conservative speakers drawing the wrath of violent leftwing protestors will be invited to speak on campus in the

1   future" is precisely the type of speculative and conclusory allegation rejected by this Court in its

2   MTD Order and the Supreme Court in *Lyons*.  SAC ¶ 380; MTD Order at 7-8; *Lyons*, 46 U.S. at

3   111.

4         *Second*, Plaintiffs again have failed to state a substantive claim for relief under § 1983 for

5   violation of either their due-process or freedom-of-association rights.  Plaintiffs have not alleged

6   facts sufficient to come within the narrow state-created danger exception to that no-duty rule,

7   which applies only where state officials have, with a culpable state of mind, knowingly increased

8   the risk of danger to a plaintiff.  Even if Plaintiffs could come within that narrow exception,

9   Plaintiffs fail to plead facts sufficient to state a freedom-of-association claim.

10         *Third*, Plaintiffs' claims against certain UC Defendants in their personal capacities must be

11   dismissed both because Plaintiffs have not alleged facts showing they acted in that capacity and

12   because the UC Defendants have qualified immunity, for the same reasons that Plaintiffs have

13   failed to state claims for relief under § 1983.  Finally, Plaintiffs' claim for punitive damages must

14   be dismissed because Plaintiffs again fail to allege the requisite intent.

15   **II.**   **BACKGROUND**

16         Plaintiffs allege that, on February 1, 2017, they visited the UC Berkeley campus to attend a

17   speaking appearance by Milo Yiannopolous ("the Yiannopolous event"), which was part of his

18   speaking tour of college campuses headlined "Dangerous Faggot Tour."  SAC ¶¶ 64, 65,112.

19   Plaintiffs allege (repeatedly) that the UC Defendants "were expecting and preparing for violence

20   to erupt" based on various prior events, including protests at Yiannopolous's other campus

21   appearances; anti-Trump protests around the country; letters, emails, social media, and press

22   reports; and "the long history of violent demonstrations at UC Berkeley."  E.g., SAC ¶ 113.

23   Plaintiffs allege that UC has a "Crowd Management Policy" ("CMP") that "'sets forth guidelines

24   for handling public disturbances, including 'civil disorders,' defined as "unlawful event[s]

25   involving significant disruption of the public order.'"  SAC ¶ 39.  Plaintiffs allege that the UC

26   Defendants "deviat[ed] from the CMP and official guidelines," and that Plaintiffs were

27   "physically, mentally, and emotionally injured and damaged, in addition to being deprived of their

28   constitutional rights."  SAC ¶¶ 114, 294.

As was the case with the First Amended Complaint, the Second Amended Complaint demonstrates that the UCPD faced a full-scale riot on February 1, 2017.  Plaintiffs allege that: there was a "volatile situation involving hundreds of protestors," SAC ¶ 3; "members of [one protest group] were marching up the street throwing bricks," *id* ¶ 124; Plaintiffs "observed a mob of marauding demonstrators, described by media as 'paramilitary-style protesters,' arrayed in Ninja outfits, carrying anarchist/communist flags, sticks and bats and (on information and belief Molotov cocktails and explosives) and wearing black masks, hoodies, and black clothing to conceal their identities," *id.* ¶ 125; "paramilitary-style protesters were observed by Plaintiffs to be in possession of dangerous and deadly weapons, including combat knives, "blackjacks," wooden poles, shields made out of plastic, wood, and metal, and pepper spray," *id.* ¶ 152; committed arson "lobbing fireworks or small bombs at UC Berkeley police, … [and] "[breaking] windows and set[ting] a diesel generator on fire," *id.* ¶¶ 154-56; the protesters "performed their unlawful activity with the intent to cause death, great bodily harm and/or mayhem …," *id.* ¶ 158; and "pandemonium ensued within Sproul Plaza," *id.* ¶ 159.

Plaintiffs allege a laundry list of things that the UC Defendants did or failed to do in connection with the Yiannopolous event and the riots that occurred on February 1, 2017:[1]

    a.    recruiting mutual aid SRTs and then informing the public of it, thus promoting a false sense of safety and security among those attending the Yiannopolous event, SAC ¶173;

    b.    advising the public through the press of the number of police officers that would be assigned to manage crowd control and expected demonstrations, thus promoting a false sense of safety and security among those attending the Yiannopolous event, *id.* ¶¶ 103, 173;

    c.    failing to plan for access routes, staging areas, communication issues, and possible weapons and containment issues, *id.* ¶¶ 174-75;

    d.    failing to follow reasonable crowd control guidelines and policies, *id.* ¶¶ 134-38;

    e.    failing to comply with the recommended guidelines, procedures and policies set forth in the CMP and other crowd control and command directives, *id.*;

---

[1] These allegations largely track former paragraph 140(a)-(r) of the First Amended Complaint. Rather than list them all in a single allegation, however, the Second Amended Complaint splits up and reorganizes these allegations.

f.   failing to adhere to UCPD approved crowd control tactics necessary to disperse or arrest individuals who were committing unlawful acts against the public and the University, *id.* ¶¶ 44, 134-38;

g.   directing law enforcement officers to vacate locations in and around Sproul Plaza and the MLK Center at UC Berkeley and observe unlawful violent activity without taking action, *id.* ¶ 143;

h.   retreating to the MLK Center to observe unlawful activity without making arrests or interfering with the activity, *id.* ¶¶ 143-44;

i.   directing law enforcement officers to cease attempting to rescue victims of violent assault and battery as they sought refuge in MLK Center, *id.* ¶¶ 164-65;

j.   agitating the mob by issuing feckless disbursal orders and hollow threats of arrest from a the safety of MLK Center where they could ensure their own safety while leaving Plaintiffs exposed to violent assaults; Said disbursal orders and hollow threats of arrest were either not delivered sufficiently loud enough for members of the crowd to hear over the riotous tumult or were delivered from a physical vantage point that failed to control the crowd and conversely acted to further incite rioters, *id.* ¶¶ 179, 268;

k.   erecting barricades in such a manner as to prevent Plaintiffs from exiting through alternative, safe pathways and forcing them to be directed back into the violent mob, which enabled angry malefactors to surround Plaintiffs and assault them, *id.* ¶ 288;

l.   failing to aid Plaintiffs upon witnessing the many assaults, batteries, and false imprisonments occurring under their watch, *id.* ¶¶ 288, 350;

m.   directing SRT members to not rescue battery victims seeking sanctuary in MLK Center, *id.* ¶ 164;

n.   failing to adequately and competently collaborate and coordinate the execution of the official crowd control policy, plans and procedures, *id.* ¶ 270; and

o.   other affirmative actions to be identified subject to discovery and further investigation, *id.* ¶ 28.

Plaintiffs further allege that the UCPD "lacked situational awareness and mission clarity," discarded "[t]actical decisions that would have averted pandemonium," and violated various UCPD official policies. SAC ¶¶ 187, 225, 227, 279. Plaintiffs again allege conclusorily that the UC Defendants "engaged in various acts that left Plaintiffs in a more dangerous position than the one in which they found them," based on the same allegations from the FAC, albeit reorganized into a new "State-Created Danger" section. SAC ¶ 268; *see* FAC ¶¶ 2, 79, 84, 87-89, 104-05.

1    Rather than attack the sufficiency of the official crowd-control policy, as they did in the

2    FAC,[2] Plaintiffs now allege that Defendant DeCoulode and other UCPD Defendants "deviated"

3    from the official crowd-control policy by "abandoning Sproul Plaza" "for the purposes of (1)

4    securing their own personal safety; (2) securing MLK Center from intrusion and property damage,

5    and (3) taking advantage of the general rule that police are under no legal duty to protect

6    individuals from physical harm."  SAC ¶¶ 134-37.  According to Plaintiffs, the tactical decision to

7    retreat from Sproul Plaza is an "affirmative action" akin to "removing sandbags protecting

8    residences from encroaching floodwaters," because "protestors surge forward into the vacuum and

9    commit violent acts," in the same way that "floodwaters devastate the infrastructure" when

10   sandbags are removed.  *Id.* ¶¶ 139-143.

11   Based on these allegations, Plaintiffs purport to state claims for relief under the Due

12   Process Clause of the Fourteenth Amendment (First Claim for Relief) and the "due process of law

13   guaranteed under the association clause of the First Amendment," SAC ¶ 325 (Third Claim for

14   Relief).

15   **III.    LEGAL STANDARD**

16   A defendant is entitled to dismissal under Rule 12(b)(6) "where the complaint lacks a

17   cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

18   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6)

19   motion, a complaint must plead facts "to state a claim to relief that is plausible on its face."

20   *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks omitted).

21   In evaluating a Rule 12(b)(6) motion, the Court accepts as true all material facts alleged in

22   the complaint and construes them in the light most favorable to the non-moving party.  *Gant v.*

23   *Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014).  The Court does not accept as true "unreasonable

24   inferences or assume the truth of legal conclusions cast in the form of factual allegations."  *Ileto v.*

25   *Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  "Threadbare recitals of the elements of a cause

---

[2] Plaintiffs alleged in the FAC that the UC Defendants "adopted an official crowd-control policy … that officers neither provide a deterring presence at locations leading into Sproul Plaza nor intervene in the attacks committed upon Plaintiffs …," in violation of official UCPD policies. FAC ¶ 142.

1   of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

2   662, 678 (2009).

3   **IV.    ARGUMENT**

4         **A.    Plaintiffs Lack Standing to Pursue Their Claims for Injunctive Relief**

5         To have standing to seek prospective injunctive relief a plaintiff must demonstrate, among

6   other requirements, that there is "a sufficient likelihood that he [or she] will again be wronged in a

7   similar way," *Lyons*, 461 U.S. at 111.  "[P]ast wrongs do not in themselves amount to [a] real and

8   immediate threat of injury necessary to make out a case or controversy." *Id.* at 103.  In *Lyons* the

9   plaintiff lacked standing to seek injunctive relief where he had been stopped by police officers and

10  subjected to a "chokehold" pursuant to a city policy, but he could not demonstrate that he was

11  "realistically threatened by a repetition" of this injury in the future.  *Id.* at 109.  As the Court

12  explained, "it is no more than conjecture to suggest that in every instance of a traffic stop, arrest,

13  or other encounter between the police and a citizen, the police will act unconstitutionally and

14  inflict injury without provocation or legal excuse.  And it is surely no more than speculation to

15  assert either that Lyons himself will again be involved in one of those unfortunate instances, or

16  that he will be arrested in the future and provoke the use of a chokehold."  *Id.* at 108.

17        The Court previously dismissed Plaintiffs' claims for injunctive relief because Plaintiffs

18  made only "conclusory assertion[s]" that they "intend[ed] to visit the UCB campus again when

19  'controversial events are held in the future' and are 'fearful they may be harmed again.'"  MTD

20  Order at 7-8.  While Plaintiffs have added allegations regarding an unrelated lawsuit against the

21  University involving the University's Major Events Policy, none of Plaintiffs' new allegations

22  demonstrate that there is any likelihood that they "will again be wronged in a similar way" in the

23  "immediate" future.  *Lyons*, 461 U.S. at 111.  Plaintiffs assert that it is "reasonable to expect that

24  conservative speakers drawing the wrath of violent leftwing protestors will be invited to speak on

25  campus in the future," SAC ¶ 380, but fail to allege any *facts* regarding which, if any, speakers are

26  expected to be invited to campus "in the future," when this unspecified event will occur, or why it

27  is "reasonable to expect" that this unidentified speaker would spark the type of "pandemonium"

28  and violence that Plaintiffs allege occurred on February 1, 2017.  *See* SAC ¶¶ 159, 225.  Plaintiffs

1    also again fail to allege any facts demonstrating that they are likely to be the victims of any future

2    attack by third-party assailants where UCPD is unable or unwilling to assist them at this event "in

3    the future."  As was the case in *Lyons*, the "speculative nature" of Plaintiffs' claims defeats their

4    claim for injunctive relief.  *See* 461 U.S. at 109; *see also Lujan v. Defenders of Wildlife*, 504 U.S.

5    555, 564 (1992) ("Such some day intentions, without any description of concrete plans, or indeed

6    any specification of when the some day will be—do not support a finding of the actual or

7    imminent injury that our cases require.").  As Plaintiffs have not and cannot allege any facts

8    showing a "real and immediate threat of repeated injury," they lack standing to seek prospective

9    injunctive relief.  *See Lujan*, 504 U.S. at 592 (internal quotation marks omitted).

10          **B.**     **Plaintiffs Fail to Allege Facts Sufficient to State a Due Process or First**
            **Amendment Claim**

11

12          Plaintiffs fail to state a claim on the merits.  The gravamen of Plaintiffs' due process and

13   freedom-of-association claims—the only two claims remaining against the UC Defendants—is

14   that the UC Defendants failed adequately to protect Plaintiffs from violence by third parties during

15   the Yiannopolous event and that, in certain respects, the UC Defendants increased the risk of

16   danger to Plaintiffs.  Neither theory can support a claim for relief here.

17          **1.**     **UC Defendants are not liable for any failure to protect Plaintiffs from**
                       **third-party violence or interference with Plaintiffs' rights**

18          As the Court recognized in its order granting the UC Defendants' motion to dismiss the

19   FAC, government actors are not liable for failure to protect individuals from private violence or

20   from interference by third parties with their exercise of First Amendment rights.  As the Ninth

21   Circuit has held, "[o]rdinarily, 'members of the public have no constitutional right to sue state

22   actors who fail to protect them from harm inflicted by third parties."  *Johnson v. City of Seattle*,

23   474 F.3d 634, 639 (9th Cir. 2007); *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1133

24   (9th Cir. 2018) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197

25   (1989)).  As reasoned by the Supreme Court in *DeShaney*, the Due Process Clause of the

26   Fourteenth Amendment "generally confer[s] no affirmative right to governmental aid, even where

27   such aid may be necessary to secure life, liberty, or property interests of which the government

28   itself may not deprive the individual."  489 U.S. at 196.  "[A] State's failure to protect an

1    individual against private violence simply does not constitute a violation of the Due Process

2    Clause." *Id.*

3            In the First Amendment context, courts have applied *DeShaney* to hold that neither the

4    state nor state officials have any obligation to assist citizens in exercising their First Amendment

5    rights, including the right of freedom of association, or to prevent others from interfering,

6    violently or otherwise, with those rights.  For example, in *Felber v. Yudof*, 851 F. Supp. 2d 1182

7    (N.D. Cal. 2011), plaintiffs alleged that they were harassed, intimidated, and assaulted while

8    advocating in favor of Israel and Judaism on the UC Berkeley campus and sued UC officials for

9    failing to protect their exercise of First Amendment rights.  *Id.* at 1186-87.  The court, relying on

10   *DeShaney*, held that the UC officials had "no constitutional obligation to prevent private actors

11   from interfering with the constitutional rights of others."  *Id.*; *see also Dunn v. Wash. Cnty. Hosp.*,

12   429 F.3d 689, 692 (7th Cir. 2005) (same); *Citizens for Health v. Leavitt*, 428 F.3d 167, 185 (3d

13   Cir. 2005) (same); *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513-14 (11th Cir. 1992)

14   (same); *Young Ams. Found. v. Covino*, No. 2:16-CV-03474-DSF-JPR (C.D. Cal. Dec. 12, 2016),

15   Dkt. No. 87, Mem. at 6-7  (same); *Felber*, 851 F. Supp. 2d at 1186  ("[E]ven assuming that

16   plaintiffs have alleged, or could amend to allege, sufficient acts of harassment and intimidation

17   directed against them based on their religion to be deemed as an interference with their free

18   exercise of that religion, they simply have no basis for pursuing such constitutional claims against

19   defendants.  With exceptions not implicated here, state actors have no constitutional obligation to

20   prevent private actors from interfering with the constitutional rights of others.") *Tater-Alexander*

21   *v. Amerjan*, No. 1:08-cv-00372 OWW SMS, 2011 WL 319012, at *13 (E.D. Cal. Jan. 28, 2011)

22   (police officers do not have an "affirmative obligation to investigate a crime in a particular way or

23   to protect one citizen from another even when one citizen deprives the other of liberty of property"

24   in order to protect the citizen's First Amendment right to petition the Government for a redress of

25   grievances); *Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420 (D. Vt. 2009), *aff'd*, 487 F. App'x

26   629 (2d Cir. 2012) (city had no duty to prevent private parties from assaulting plaintiff while

27   exercising his First Amendment right to picket); *see also Nelson v. Streeter*, 16 F.3d 145, 150 (7th

28   Cir. 1994) (suggesting that *DeShaney* implies "that the police do not have a constitutionally

1   enforceable duty to protect an artist and the populace from a mob" angry about the content of the

2   artist's work).

3        Accordingly, the UC Defendants had no duty under the Constitution to protect Plaintiffs

4   from violence by private parties or interference by those parties with their First Amendment rights.

5   The UC Defendants had no constitutional duty to adopt *any* crowd-control policy, far less to adopt

6   one that is not "vague," as Plaintiffs (wrongly) allege UC Berkeley's is.  SAC ¶ 266.  If the UC

7   Defendants had adopted no crowd-control policy at all—which would not have violated any

8   constitutional duty—individuals engaged in protected speech and demonstrations would have no

9   notice of how the UCPD might respond; they would also have no constitutional claim.  Surely

10  then, UC Defendants cannot be liable for adopting a policy, regardless of whether Plaintiffs think

11  it is precise enough.[3]

12       Nor did the UC Defendants have any constitutional duty to, for example, "plan for access

13  routes," "enforce the law," implement "thorough and effective preplanning for significant crowd

14  events," not "vacate locations in and around Sproul Plaza," or to "use Chemical Agents, smoke, or

15  other Less Lethal devices to disperse the crowd."  *See, e.g.*, SAC ¶¶ 42-46, 143, 174.  One or more

16  of these things might or might not have been good policy or practice, but under controlling law the

17  UC Defendants' alleged failure to do any or all of them does not support a claim for relief under

18  § 1983.

19              **2.       Plaintiffs fail to allege facts sufficient to state a claim under the state-
                          created danger exception**

20

21       Although the state's failure to protect an individual against private violence does not

22  generally violate the guarantee of due process, it can where the state action "'affirmatively

23  place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an

24  individual to a danger which he or she would not have otherwise faced."  *Kennedy v. City of

25  Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *DeShaney*, 489 U.S. at 197, 201).  "More

26  _____

27  [3] This is not a situation in which a state defendant has adopted an allegedly vague policy that
    criminalizes conduct or regulates individuals' ability to exercise their First Amendment rights,
    such as a criminal statute or a permitting ordinance.  *See, e.g.*, *Reno v. Am. Civil Liberties Union*,
28  521 U.S. 844, 871-72 (1997) (vagueness concerns heightened when an enactment poses a risk of
    chilling speech or imposes potential criminal liability).

particularly, in order to state [a] claim against police for failing to provide protection, a plaintiff must allege facts showing that the police put the plaintiff in a 'worse position than that in which he would have been had [the police] not acted at all.'"  *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 968 (N.D. Cal. 2017), *aff'd in relevant part*, 897 F.3d 1125 (9th Cir. 2018).  In short, a plaintiff must allege (1) an "affirmative act" by the defendant, and (2) that the defendant took the "affirmative act" with a culpable mental state.  *See id.* at 968-69; MTD Order at 9.  Here, Plaintiffs fail to satisfy either element.

> ### (a) *Plaintiffs do not allege any "affirmative conduct" by the UC Defendants*

Plaintiffs allege that the UC Defendants affirmatively created a danger by (1) "discarding" the crowd-control plan in retreating from Sproul Plaza after informing the public about the University's crowd-control plan and thereby "promoting a false sense of safety and security"; (2) erecting barriers that "prevented an alternative safe exit point from the southern end of Sproul Plaza"; and (3) "[i]ssuing feckless dispersal orders … which only agitated the violent mob further."  SAC ¶¶ 173, 268.  All of the other allegations of wrongdoing by the UC Defendants relate to things that they *failed* to do or decided *not to do*, not affirmative actions that could potentially support a "state-created danger" exception.

As a threshold matter, the Court dismissed the first and third purported "affirmative acts" because Plaintiffs "failed to specify which actors made dispersal orders, threats of arrest, and false assurances."  MTD Order at 10 (citing FAC ¶¶ 92 & 112).  Plaintiffs fail to cure these deficiencies in the SAC.  *See* SAC ¶¶ 204, 237.  Even aside from this failure, none of Plaintiffs' allegations of affirmative acts can support a claim under the state-created danger doctrine.  The first—promoting a false sense of safety and security by informing the public that officers intend to protect their safety—would, if deemed to satisfy the exception, open a gaping loophole in the rule that the police have no duty to protect members of the public from third-party violence.  Every time an event occurred, the police said they planned to take safety precautions pursuant to a crowd-control plan, and someone was injured, there would be a claim that they "increased the danger" by promoting a "false sense of safety."

1      Plaintiffs attempt to concoct an "affirmative action" by characterizing the UC Defendants'

2   actions as "deviating" from or "discarding" the crowd-control plan, but the gravamen of their

3   claim remains the same:  the UC Defendants allegedly could have protected Plaintiffs from violent

4   third parties but either failed to do so or chose not to do so.  This is not "affirmative action."

5   Indeed, in so amending their complaint, Plaintiffs have pled themselves out of the state-created

6   danger exception as a matter of law.  In *Johnson*, 474 F.3d at 638, the Ninth Circuit rejected a

7   nearly identical theory asserted by plaintiffs injured by a violent Mardi Gras mob.  As is the case

8   here, the *Johnson* plaintiffs asserted that the police "enhanc[ed] their danger and proximately

9   caus[ed] their injuries by *abandoning the operational plan* for crowd control, adopted [prior to the

10  mob-event], that called for a large, highly visible police presence and aggressive law enforcement,

11  and, instead, implementing a more passive plan of staying on the perimeter of the crowd …."  *Id.*

12  (emphasis added).  But, "[t]he decision to switch from a more aggressive operation plan to a more

13  passive one was not affirmative conduct … because it did not place them in any worse position

14  than they would have been in had the police not come up with any operational plan whatsoever."

15  *Id.* at 641.

16      Here too, Plaintiffs fail to allege facts demonstrating that any "affirmative action" by any

17  specific UC Defendant placed them in a worse position than they would have been had Defendants

18  implemented no crowd control plan at all.  Plaintiffs again assert that Defendant DeCoulode

19  ordered a retreat from Sproul Plaza to the MLK center, which "opened a path and effectively

20  directed the violent protestors to move forward and thereby come into contact with" Plaintiffs,

21  SAC ¶ 138, but the Court previously rejected this theory because Plaintiffs alleged that "protestors

22  intended to enter Sproul Plaza," and the order to vacate Sproul Plaza therefore "did not expose

23  Plaintiffs 'to a danger which he or she would not have otherwise faced.'"  MTD Order at 10-11

24  (quoting *Hernandez*, 897 F.3d at 1133); *see also* SAC ¶ 89 (alleging that protestors made pre-

25  event plans "to assemble at Sproul Plaza for the purpose of engaging in an unlawful and violent

26  riot," independently of any action or inaction by the UC Defendants).  Plaintiffs also fail to allege

27  that they "would have made it 'to safety'" had Defendant DeCoulode not given the order to vacate

28  Sproul Plaza.  *Hernandez*, 897 F.3d at 1135.  To the contrary, Plaintiffs appear to allege that

1   violent protestors were *already in* Sproul Plaza and that Plaintiffs entered the plaza at or after 6:30

2   p.m., nearly half an hour after "unknown individuals began lobbing fireworks or small bombs at

3   UC Berkeley police," "several people tore down the double-barricades and stormed the building"

4   and the mob had "broken windows and set a diesel generator on fire."  SAC ¶¶ 154-156, 205

5   (Jennings and Redelsheimer), 236 (Hatch).[4]

6          Moreover, Plaintiffs abandon the only theory of "affirmative conduct" the Court approved

7   in its prior order.  Plaintiffs assert that they are "*not* alleging that the original CMP providing for

8   … installation of the barricade system created the danger," but instead that Defendant

9   DeCoulode's order to vacate the plaza and leave the barricades "unmanned … left the Plaintiffs in

10  a more dangerous position than they would have been in had the initial plan not been discarded."

11  SAC ¶ 268, n.71 (emphasis added); *see* MTD Order at 12.  But the Ninth Circuit's decision in

12  *Johnson* forecloses this artful attempt to broaden the scope of the state-created danger exception.

13  The test is not whether Plaintiffs were left in a more dangerous position than if the UC Defendants

14  had not "discarded" the "initial plan," but rather whether Plaintiffs were left in a more dangerous

15  position than if the UC Defendants had implemented *no plan at all*.  *See Johnson*, 474 F.3d at 641

16  ("[T]he fact that the police at one point had an operational plan that might have more effectively

17  controlled the crowds … does not mean that an alteration to this plan was affirmative conduct that

18  placed the [plaintiffs] in danger.").  Plaintiffs have not and cannot allege facts supporting such a

19  theory.

20                    *(b)      Plaintiffs fail to allege the UC Defendants acted with the requisite*
                                *mental state*

21

22          Even where plaintiffs can show that state defendants took affirmative actions that created a

23  danger the plaintiffs would not otherwise have faced, the plaintiffs must also allege and prove that

24  the defendants acted with a "*culpable mental state*."  *Hernandez*, 241 F. Supp. 3d at 969 (quoting

25  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (emphasis added); see also *Estate of*

26  *Kalama v. Jefferson County*, No. 3:12-cv-01766—SU, 2015 WL 464891 at *6 (D. Or., Feb. 4

27  ─────────────────────
    [4] As the Court noted, Plaintiff Fletcher did not allege he entered Sproul Plaza and therefore he
28  "was not affected by the barricades, or any of the Defendants' conduct."  MTD Order at 14.  The
    SAC adds no contrary allegations.

2015) (under state-created danger doctrine, plaintiffs must prove "official acts with a requisite degree of culpability").  At a minimum, that means the plaintiffs must plead and prove that the defendants "'recognize[ed] [an] unreasonable risk and actually intend[ed] to expose the plaintiff[s] to such risks without regard to the consequences to the plaintiff[s]."  *Hernandez*, 241 F.Supp.3d at 969 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996).  In other words, the plaintiff must have been "deliberately indifferent to a danger that [they] created."  *Id*.; see also *Estate of Kalama*, 2015 WL 464891 at *6 (must be "deliberate indifference" to a "known and obvious danger").  This is a standard that is stricter even than "gross negligence."  See *Kennedy*, 439 F.3d at 1064 (rejecting "a 'bare' gross negligence" standard).

But where, as here, Plaintiffs explicitly allege that the "affirmative acts" at issue were *not* part of the crowd-control plan, but instead the on-the-ground *tactical* decisions made to "deviate" from that plan, the applicable standard is the "purpose to harm" standard.  Plaintiffs' amendments to the operative complaint demonstrate that the "deliberate indifference" standard cannot apply to Plaintiffs' claims.  Plaintiffs no longer challenge the adequacy of the crowd-control plan that the UC Defendants allegedly "deviated" from, but rather the "tactical" on-the-ground decision to "deviate" from "established" policies and procedures and retreat from the barriers and Sproul Plaza into the MLK center.  *See* SAC ¶¶ 134-36, 269, 289, 292; 268 n.71 ("Plaintiffs are not alleging that the original CMP providing for barricades and the crowd-control plan for the Yiannopolous event calling for installation of the barricade system created the danger ….").  Plaintiffs are therefore *not* challenging the decisions that Defendants allegedly made in advance of the violent riot, e.g., in anticipation of the riot, but instead the snap decisions that Defendant DeCoulade made when faced with an escalating and unprecedented situation on campus.  *See id.*

These are precisely the type of circumstances in which the Ninth Circuit has applied the "purpose to harm" standard in lieu of the deliberate indifference standard.  *See, e.g.*, *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) ("[O]ur cases therefore require that when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply."); *id*. at 1137 ("In *Lewis*, the Supreme Court … drew a distinction

between situations that evolve in a time frame that permits the officer to deliberate before acting and those that escalate so quickly that the officer must make a snap judgment.").

As the Court previously noted, the deliberate indifference standard may be appropriate where the plaintiff challenges decisions and plans made in "anticipat[ion]" of "violent riots." MTD Order at 9, n.2; *see also MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009) (deliberate-indifference standard appropriately applied where officers "hav[e] time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations" (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998))).  Accordingly, in *Hernandez*, where the plaintiffs alleged that "[a]s part of their crowd-control plan*, the Officers" directed the plaintiffs into a violent mob, the Ninth Circuit applied the deliberate indifference standard.  897 F.3d at 1129 (emphasis added).  Here, in contrast, Plaintiffs disavow this very theory and instead assert that Defendant DeCoulode and other unnamed UC Defendants' "deviated" or "discarded" the deliberated-upon crowd-control plan and procedures.

Plaintiffs have not and cannot allege facts demonstrating that the UC Defendants took any of the purported "affirmative acts" discussed *supra* "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  Even applying the more liberal deliberate indifference standard, moreover, Plaintiffs fail to allege a single *fact* demonstrating that Defendant DeCoulode or the UC Defendants vacated Sproul Plaza, left the barricades "unmanned," or issued "feckless dispersal orders" with the specific knowledge that it posed an "unreasonable risk and actually intend[ed] to expose [the plaintiffs] to such risks without regard to the consequences to [the plaintiffs]." *Hernandez*, 897 F.3d at 1135 (quoting *Grubbs*, 92 F.3d at 899).  Instead, Plaintiffs repeat the same "conclusory and formulaic recitations" that "Defendant DeCoulode intended to subject Plaintiffs and the public to harm from protestors and acted with deliberate indifference toward their safety."  MTD Order at 14; SAC ¶ 137.  Plaintiffs therefore cannot state a claim under the state-created danger exception.

### 3.     Plaintiffs fail to plead a freedom-of-association claim

Even if the UC Defendants' purported failure to protect Plaintiffs from violent protestors could support a claim under the state-created danger exception (which it does not), Plaintiffs fail to allege a freedom-of-association claim.

The Court previously dismissed Plaintiffs' freedom-of-association claim because Plaintiffs "asserted no separate factual allegations of how Defendants' actions affirmatively interfered with their First Amendment right to assemble." MTD Order at 16. Plaintiffs alleged only that the UC Defendants purportedly failed to prevent third parties from interfering with Plaintiffs' First Amendment rights. *Id.* Plaintiffs again fail to allege any facts demonstrating that the UC Defendants have "affirmatively interfered" with their rights. Plaintiffs conclusorily allege that the "UC Berkeley Defendants have a pattern and practice of denying, for no reason and for false pretenses, the First Amendment Rights of its citizens, their guests, and invited visitors, including Milo Yiannopolous, Ann Coulter, and others." SAC ¶ 328. But this assertion fails to cure the deficiency the Court identified in its prior order: Plaintiffs allege *no facts* showing that the UC Defendants have "affirmatively interfered with" Plaintiffs' right to assemble.

Plaintiffs' theory that the UC Defendants "coordinate and collude with the Riot Defendants" and "similar violent actors belonging to the same conspiratorial groups … to engage in violent activity for the purpose and with the objective of squelching conservatives engaging in First Amendment activity on or around the UC Berkeley campus" fares no better, as Plaintiffs allege no "specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989); SAC ¶ 331. Plaintiffs allege that "certain" unidentified UC Defendants are "Facebook friends" with "members of groups such as B.A.M.N. and other violent groups," but this lone, vague allegation is insufficient to demonstrate the existence of a conspiracy. SAC ¶ 332. Plaintiffs do not and cannot allege any facts detailing the specific agreement between the alleged conspirators; the scope of the conspiracy; the role of the individual UC Defendants in the conspiracy; or when or how the conspiracy operated. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937 (9th Cir. 2012) (conspiracy allegations insufficient when plaintiff did not plead the scope of the conspiracy, what role the defendant had, or when and how

1   the conspiracy operated)*; see also Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 954-55 (N.D. Cal.

2   2014) (dismissing section 1983 claim based on purported conspiracy where plaintiff failed to

3   allege facts demonstrating specific agreement, scope of conspiracy, and role of defendants.)

4       **C.   Plaintiffs' Claims Against UC Defendants in Their Personal Capacities Must
            Be Dismissed**

5

6           **1.   Plaintiffs do not allege facts sufficient to show that UC Defendants
                acted in their personal capacities**

7           Plaintiffs purport to sue Dirks in his "individual capacity," and Christ, Sutton, Greenwell,

8   Yao, Harris, DeCoulode, and Williams in both their official and "individual" or "personal"

9   capacities.  SAC ¶¶ 19-22, 24-27)  But, "[t]o state a claim against state officials in their individual

10  capacities, the complaint must set forth allegations from which the court can infer that the

11  individuals acted in their individual capacities."  *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp.

12  3d 993, 1001 (N.D. Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  To

13  determine whether a defendant is properly sued in his or her individual or personal capacity, "the

14  court must examine the specifics of the conduct involved and not merely look at the caption of the

15  complaint."  *Id.* (internal quotation marks omitted); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991)

16  ("the distinction between official-capacity suits and personal-capacity suits is more than a mere

17  pleading device.") (internal quotation marks omitted).

18          A plaintiff "is required to plead specific facts regarding each individual Defendant's

19  conduct sufficient to plausibly state a cause of action against that Defendant individually."  *Clark*

20  *v. Cal. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 814-815 (N.D. Cal. 2016).  To

21  determine whether a defendant is properly sued in her personal capacity, "the court must examine

22  the specifics of the conduct involved and not merely look at the caption of the complaint."

23  *Peralta*, 124 F. Supp. 3d at 1001 (internal quotation marks omitted).

24          Plaintiffs fail to allege any facts that support an inference that these UC Defendants were

25  acting their personal capacities at UC.  Indeed, there are no allegations at all of any actions or

26  decisions made by Defendants Dirks, Christ, Sutton, and Greenwell.  None of the allegations with

27  respect to Defendants Yao, Harris, DeCoulode, and Williams are remotely sufficient to support a

28  finding that they acted in their personal capacities.

1    Plaintiffs' claims against UC Defendants in their individual or personal capacities should

2    therefore be dismissed.

3                    **2.    The UC Defendants are entitled to qualified immunity from damages
                             claims**

4
          Plaintiffs' damages claims against the UC Defendants in their personal capacities must be

5    dismissed for the separate and independent reason that they are entitled to qualified immunity.

6    "State officials are entitled to qualified immunity from suits for damages 'insofar as their conduct

7    does not violate clearly established statutory or constitutional rights of which a reasonable person

8    would have known.'" *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616

9    F.3d 963, 968 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To

10   determine whether an official is entitled to qualified immunity to damages claims against them in

11   their personal capacities, courts ask: (1) whether, taken in the light most favorable to the party

12   asserting the injury, the facts alleged show the official's conduct violated a constitutional (or

13   statutory) right; and (2) if so, whether the right was clearly established in light of the specific

14   context of the case.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "For a constitutional [or statutory]

15   right to be clearly established, its contours must be sufficiently clear that a reasonable official

16   would understand that what he is doing violates that right."  *Hope v. Pelzer*, 536 U.S. 730, 739

17   (2002) (internal quotation marks omitted).  It is within a court's "sound discretion" to address

18   these two prongs in any sequence it sees fit.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

19        Here, for the reasons explained above, Plaintiffs satisfy neither step of the *Saucier*

20   analysis.  The UC Defendants are entitled to qualified immunity under the first step because

21   Plaintiffs fails to allege any facts demonstrating a duty to protect them from third-party violence or

22   interference with their rights, as required for both their due process and First Amendment claims.

23   *See, e.g.*, *Comm. for Immigrant Rights v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1201-02 (N.D.

24   Cal. 2009) ("[P]laintiffs' vague and conclusory assertions of wrongdoing … are insufficient to

25   establish the requisite factual predicate to demonstrate that the … defendants personally violated

26   any of the plaintiffs' constitutional rights" under *Saucier*); *see supra* pp. 10-14.  Though the Court

27   need not reach the second step, *see Comm. for Immigrant Rights*, 644 F. Supp. 2d at 1201-02,

28

1   Plaintiffs fare no better there, as they have not alleged that any UC Defendant violated any clearly

2   established right.  A reasonable official in the position of any of the individual UC Defendants

3   would have had no reason to think his or her conduct violated any constitutional rights.  Far from

4   its being clearly established that the UC Defendants had a constitutional duty to provide police

5   protection to prevent others from interfering with Plaintiffs' speech, it was clearly established that

6   they had no such duty.  Nor was it clearly established that the UC Defendants were, in their efforts

7   to protect the safety and rights of all concerned, forbidden to make the tactical decisions that they

8   did during what is alleged to have been a full-scale riot on the UC Berkeley campus.  To the

9   contrary, Ninth Circuit case law recognizes that—absent facts demonstrating that plaintiffs would

10  have been better off with no operational crowd control plan at all—tactical decisions and revisions

11  to such plans do not constitute "affirmative conduct."  *See Johnson*, 474 F.3d at 638-41 (rejecting

12  state-created danger claim based on police "abandoning the operational plan for crowd control"

13  and implementing a "more passive plan of staying on the perimeter" of a violent crowd).

14          Courts have found that university officials have qualified immunity from various

15  constitutional claims that are based on allegations that the officials have failed to protect the

16  plaintiffs from violent interference with their rights by third parties.  For example, in *Melendez-*

17  *Garcia v. Sanchez*, 629 F.3d 25 (1st Cir. 2010), an ROTC officer was assaulted during a student

18  protest at the University of Puerto Rico and sued university officials under section 1983 for

19  alleged failure to adequately provide security for the ROTC.  The First Circuit held that the

20  university officials were entitled to qualified immunity on the plaintiffs' constitutional claims

21  because, under *DeShaney*, "a State's failure to protect an individual against private violence

22  simply does not constitute a violation of the Due Process Clause."  *Id.* at 36 (quoting *DeShaney*,

23  489 U.S. at 197).  The court recognized that "a university, like a local government, must choose

24  how to use limited resources," and thus it would not have been clear to a reasonable official that

25  the university's security decisions violated the plaintiff's constitutional rights.  *Id.* at 37.

26  Similarly, the Eleventh Circuit held that university officials were entitled to qualified immunity

27  against a claim that they deprived a student killed in a school shooting of due process rights by

28

1    failing to protect him from the known threats of another student.  *Alexander v. Univ. of N. Fla.*, 39

2    F.3d 290, 292 (11th Cir. 1994) (per curiam).

3              In light of the controlling precedent that government actors owe no duty to protect

4    members of the public from violence or interference with their rights by third parties and that, in

5    the context of a riot, police officers can be liable only where their actions are taken with a purpose

6    to harm the plaintiffs that is unrelated to legitimate law enforcement objectives, it would certainly

7    not have been clear to a reasonable official that either the UC Defendants' alleged withholding of

8    police protection to Plaintiffs or their tactical decisions during the riot violated Plaintiffs' rights.

9    *See supra* pp. 7-12.  Plaintiffs' claims for damages should be dismissed.

10             **D.      Plaintiffs Fail to State a Claim for Punitive Damages**

11             Plaintiffs' SAC prays for punitive damages.  Such damages are unavailable against the UC

12   Defendants in their official capacities under § 1983;[5] and, to the extent Plaintiffs otherwise state

13   valid claims against the individuals in their personal capacities (which they do not), Plaintiffs fail

14   to allege the requisite malice or evil intent.

15             Plaintiffs' claim for punitive damages against the UC Defendants in their personal

16   capacities must be dismissed, even assuming they have adequately pleaded the substantive claims

17   (they have not), because Plaintiffs fail to allege that their conduct was "motivated by evil motive

18   or intent, or . . . involves reckless or callous indifference to the federally protected rights of

19   [Plaintiffs]" as required to support a claim for punitive damages under section 1983.  *Smith v.*

20   *Wade*, 461 U.S. 30, 56 (1983); Cal. Civ. Code § 3294.

21   **V.      CONCLUSION**

22             The UC Defendants respectfully submit that all of Plaintiffs' claims against them should be

23   dismissed with prejudice.

24

25

26

27

28

---

[5] The Court dismissed Plaintiffs' claims for punitive damages against the UC Defendants in their official capacities without leave to amend.  MTD Order at 16-17.

1    DATED:  January 18, 2019            MUNGER, TOLLES & OLSON LLP
2                                          BRADLEY S. PHILLIPS
                                           BRYAN H. HECKENLIVELY
3                                          ELIZABETH A. KIM

4

5                                        By:      _/s/ Bradley S. Phillips_____
                                                    BRADLEY S. PHILLIPS
6                                        Attorneys for Defendants Janet Napolitano, Nicholas B.
7                                        Dirks, Carol T. Christ, Stephen C. Sutton, Joseph D.
                                         Greenwell, Margo Bennett, Alex Yao, Leroy Harris,
8                                        Marc Decoulode, and Joey Williams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28