1   BRADLEY S. PHILLIPS (SBN 85263)
    brad.phillips@mto.com
2   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue
3   Fiftieth Floor
    Los Angeles, California 90071-3426
4   Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
5
    BRYAN H. HECKENLIVELY (SBN 279140)
6   bryan.heckenlively@mto.com
    ELIZABETH A. KIM (SBN 295277)
7   elizabeth.kim@mto.com
    MUNGER, TOLLES & OLSON LLP
8   560 Mission Street
    Twenty-Seventh Floor
9   San Francisco, California 94105-2907
    Telephone:    (415) 512-4000
10  Facsimile:    (415) 512-4077

11  Attorneys for Defendants
    JANET NAPOLITANO, NICHOLAS B.
12  DIRKS, CAROL T. CHRIST, STEPHEN C.
    SUTTON, JOSEPH D. GREENWELL,
13  MARGO BENNETT, ALEX YAO, LEROY
    HARRIS, MARC DECOULODE, AND JOEY
14  WILLIAMS

15                  UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

17

18

19  JOHN JENNINGS, et al.,                Case No. 18-CV-00268-CW

20          Plaintiffs,                   **REPLY IN SUPPORT OF MOTION OF
                                          UNIVERSITY OF CALIFORNIA
21      vs.                               DEFENDANTS TO DISMISS THE
                                          SECOND AMENDED COMPLAINT
22  JANET NAPOLITANO, et al.,             (RULES 12(b)(1) & 12(b)(6))**

23          Defendants.                   Judge:  Hon. Claudia Wilken
                                          Date:   March 19, 2019
24                                        Time:   2:30 p.m.

25

26

27

28

                                          Case No. 18-CV-00268-CW
        REPLY I/S/O UC'S MOTION TO DISMISS THE SAC

1

**TABLE OF CONTENTS**

2                                                                                                    <u>**Page**</u>

3   I.    INTRODUCTION ..................................................................................................................1

4   II.   ARGUMENT ......................................................................................................................2

5         A.   Plaintiffs Lack Standing to Pursue Their Claims for Injunctive Relief ....................2

6         B.   Plaintiffs Fail to Allege Facts Sufficient to State a Due Process or First
               Amendment Claim ...................................................................................................3

7
               1.   UC Defendants are not liable for any failure to protect Plaintiffs
8                   from third-party violence or interference with Plaintiffs' rights...................4

9              2.   Plaintiffs fail to allege facts sufficient to state a claim under the
                   state-created danger exception ...................................................................4
10
                   (a)   Plaintiffs do not allege any "affirmative conduct" by the UC
11                       Defendants.......................................................................................4

12                 (b)   Plaintiffs fail to allege the UC Defendants acted with the
                       requisite mental state ......................................................................8
13
               3.   Plaintiffs fail to plead a freedom-of-association claim ................................9
14
          C.   Plaintiffs' Claims Against the UC Defendants in Their Personal Capacities
15             Must Be Dismissed................................................................................................10

16             1.   Plaintiffs do not allege facts sufficient to show that UC Defendants
                   acted in their personal capacities...............................................................10
17
               2.   The UC Defendants are entitled to qualified immunity from
18                 damages claims .......................................................................................11

19        D.   Plaintiffs Fail to State a Claim for Punitive Damages.............................................12

20  III.  CONCLUSION ................................................................................................................12

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

**FEDERAL CASES**

3

*Ashcroft v. al-Kidd*,
4      563 U.S. 731 (2011) ...............................................................................................................12

5

*Burns v. Cty. of King*,
6      883 F.2d 819 (9th Cir. 1989).................................................................................................10

7  *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*,
      654 F.3d 975 (9th Cir. 2011).................................................................................................12

8

*City & Cty. of S.F. v. Sheehan*,
9      135 S. Ct. 1765 (2015) ..........................................................................................................12

10  *City of Los Angeles v. Lyons*,
      461 U.S. 95 (1983) ..............................................................................................................2, 3
11

12  *Clark v. Cal. Dep't of Forestry & Fire Prot.*,
      212 F. Supp. 3d 808 (N.D. Cal. 2016) .................................................................................10

13

*Cty. of Sacramento v. Lewis*,
14      523 U.S. 833, 853 (1998) .......................................................................................................9

15  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
      489 U.S. 189 (1989) ...............................................................................................................4
16

17  *Harlow v. Fitzgerald*,
      457 U.S. 800 (1982) .............................................................................................................11

18  *Hernandez v. City of San Jose*,
19      241 F. Supp. 3d 959 (N.D. Cal. 2017) ...............................................................................7, 8

20  *Hernandez v. City of San Jose*,
      897 F.3d 1125 (9th Cir. 2018)..................................................................................... 4, passim
21

22  *Johnson v. City of Seattle*,
      474 F.3d 634 (9th Cir. 2007)...................................................................................... 1, passim

23  *Kisela v. Hughes,*
24      138 S. Ct. 1148 (2018) ..........................................................................................................11

25  *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*,
      616 F.3d 963 (9th Cir. 2010).................................................................................................11
26

27  *L.W. v. Grubbs*,
      974 F.2d 119 (9th Cir. 1992)...............................................................................................6, 9

28

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*MacEachern v. City of Manhattan Beach*,
    623 F. Supp. 2d 1092 (C.D. Cal. 2009)....................................................................................8

4

*Mandel v. Bd. of Trustees of Cal. St. Univ.*,
    2018 WL 1242067 (N.D. Cal. Mar. 9, 2018) ...........................................................................9

5

6

*Munger v. City of Glasgow Police Dep't*,
    227 F.3d 1082 (9th Cir. 2000)..................................................................................................7

7

8

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011)....................................................................................................8

9

*Penilla v. City of Huntington Park*,
    115 F.3d 707 (9th Cir. 1997)....................................................................................................6

10

11

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008)..................................................................................................8

12

13

*Reno v. Am. Civil Liberties Union*,
    521 U.S. 844 (1997) .................................................................................................................4

14

15

*San Jose Christian Coll. v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004)..................................................................................................9

16

*Saucier v. Katz*,
    533 U.S. 194 (2001) ...............................................................................................................11

17

18

*Smith v. Wade*,
    461 U.S. 30 (1983) .................................................................................................................12

19

*White v. Pauly*,
    137 S. Ct. 548 (2017) (per curiam) ........................................................................................11

20

21

*Whitley v. Albers*,
    475 U.S. 312 (1986) .................................................................................................................9

22

23

*Wood v. Ostrander*,
    879 F.2d 583 (9th Cir. 1989)....................................................................................................6

24

*Woods v. Moss*,
    134 S. Ct. 2056 (2014) ...........................................................................................................11

25

26

*Young America's Foundation v. Napolitano et al*,
    No. 17-cv-02255-MMC (N.D. Cal.) .......................................................................................3

27

28

REPLY I/S/O UC'S MOTION TO DISMISS THE SAC

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                                      **Page(s)**

3   STATE STATUTES

4   Cal. Civ. Code § 3294 ...........................................................................................................12

5   CONSTITUTIONAL PROVISIONS

6   First Amendment.............................................................................................. 1, passim

7   Fourteenth Amendment..................................................................................................11, 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **I.      INTRODUCTION**

2          Despite being afforded an opportunity to amend, Plaintiffs have once again failed to plead

3   facts sufficient to state a claim under the "state-created danger" exception to the general rule that

4   government officials, like the UC Defendants, have no constitutional duty to protect individuals

5   from third-party violence or interference with the exercise of First Amendment rights.  Plaintiffs

6   no longer challenge the crowd-control plans allegedly made in advance by certain UC Defendants

7   but instead challenge only the *tactical* decisions to "deviate" from those plans.  Under Ninth

8   Circuit case law, decisions to "deviate" from a crowd-control plan are not "affirmative acts"

9   sufficient to state a claim under the state-created danger doctrine.  *See Johnson v. City of Seattle*,

10  474 F.3d 634 (9th Cir. 2007).  That decision in itself warrants dismissal of Plaintiffs' claims.

11         Even if Plaintiffs could somehow avoid this controlling authority, Plaintiffs further fail to

12  respond to the argument that the heightened "purpose-to-harm" standard must apply in light of

13  Plaintiffs' amendments to the complaint.  Plaintiffs have not and cannot plausibly allege that any

14  UC Defendant took any specific "affirmative action" for the purpose of harming them.  To the

15  contrary, the SAC itself alleges that the UC Defendants "discarded" the crowd-control plan in

16  order to prevent injuries to police officers and to protect the MLK center "from intrusion and

17  property damage."  (SAC ¶ 135.)   While Plaintiffs may have preferred that the UC Defendants

18  prioritize Plaintiffs' safety over all other considerations (including the safety of the officers), the

19  UC Defendants were under no legal duty to do so and their *lawful* decision not to protect Plaintiffs

20  from third-party violence does not demonstrate even deliberate indifference, much less purpose-to-

21  harm.

22         Finally, even if Plaintiffs could state a claim under the state-created danger exception

23  (which they cannot), Plaintiffs fail to demonstrate why any UC Defendant should be held liable in

24  his or her personal capacity.  The UC Defendants are entitled to qualified immunity because a

25  reasonable official under the circumstances could have concluded that it was lawful to deviate

26  from the crowd-control plan when faced with a full-scale and fast-paced riot.

27

28

1  **II.     ARGUMENT**

2      **A.     Plaintiffs Lack Standing to Pursue Their Claims for Injunctive Relief**

3      Plaintiffs fail to set forth any factual allegations demonstrating that there is "any real or

4  immediate threat that plaintiff[s] will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S.

5  95, 111 (1983).  Rather than identify any factual allegations in the SAC that demonstrate "any real

6  of immediate threat," for purposes of standing for injunctive relief, Plaintiffs cite a mishmash of

7  cases for the propositions that First Amendment injuries can satisfy the Article III standing

8  "injury-in-fact" requirement and can be sufficiently "irreparable" for purposes of preliminary

9  injunctive relief.  (Opp. at 17-18.)  But these generic legal principles have no bearing on whether

10 Plaintiffs have alleged facts demonstrating that there is "a sufficient likelihood that he [or she] will

11 again be wronged in a similar way," because "past wrongs do not in themselves amount to [a] real

12 and immediate threat of injury necessary to make out a case or controversy." *Lyons*, 461 U.S. at

13 103, 111.

14     The Court has already rejected Plaintiffs' speculative theory that they might be injured at

15 some future event at an unknown time and place, with an unknown conservative speaker, where

16 unknown third-parties violently riot, and that Plaintiffs will again somehow find themselves in a

17 position where the UC Defendants are unwilling or unable to protect Plaintiffs from third-party

18 violence.  Despite the Court's explicit conclusion that that such vague and speculative allegations

19 are insufficient, Plaintiffs again rely on the conclusory allegation that it is "reasonable to expect

20 that conservative speakers drawing the wrath of violent leftwing protestors will be invited to speak

21 on campus in the future." (SAC ¶ 380; MTD Order at 7-8.)  This is insufficient as a matter of law.

22     *Lyons* is on point.  In *Lyons*, the plaintiff lacked standing to seek injunctive relief where he

23 had been stopped by police officers and subjected to a "chokehold" pursuant to a city policy, but

24 he could not demonstrate that he was "realistically threatened by a repetition" of this injury in the

25 "immediate" future.  461 U.S. at 109.  As is the case here, the plaintiff's theory required *multiple*

26 independent factors to all coincide in order for him to "again be wronged in a similar way," i.e., he

27 would have to be stopped by the police, resist arrest or otherwise provoke a police response, and

28 that response would have to be a chokehold.  *Id.* at 111.  Contrary to Plaintiffs' argument, the fact

1  that the "trial court would have had to conclude the plaintiff was likely to commit crimes in the

2  future" was immaterial to the Court's conclusion.  (Opp. at 19.)  The Court held that, "even

3  assuming that Lyons would again be stopped" by the police "in the reasonably near future, it is

4  untenable to assert … that strangleholds are applied by the Los Angeles police to every citizen

5  who is stopped or arrested regardless of the conduct of the person stopped."  461 U.S. at 107.  Nor

6  can Plaintiffs seriously contend that their injuries do not "require[] the independent action of third

7  parties," as the gravamen of their claims is that the UC Defendants failed to protect them from

8  violent third-party rioters.  (Opp. at 20.)  Here too, even assuming a conservative speaker is again

9  invited to speak at the UC Berkeley campus,[1] Plaintiffs have not and cannot plausibly allege facts

10  demonstrating any real or *immediate* risk that they will attend such an event, that violent protestors

11  will again engage in a full-scale riot at the event, that UC police officers will respond in the same

12  way, i.e., deviate from the official crowd-control plan, and that Plaintiffs will be assaulted by

13  violent third parties under conditions where the police are unwilling or unable to assist them.

14         **B.**     **Plaintiffs Fail to Allege Facts Sufficient to State a Due Process or First Amendment Claim**

15

16         Plaintiffs' Opposition fails to address the controlling Ninth Circuit decision in *Johnson.*

17  Having amended their complaint to base their entire theory of liability on alleged "tactical" on-the-

18  ground decisions to "discard[]" the pre-planned crowd-control policy, Plaintiffs cannot identify an

19  "affirmative action" under the state-created danger doctrine as a matter of law.  Even if they could,

20  Plaintiffs all but concede that the purpose-to-harm standard applies to the alleged conduct by the

21  UC Defendants here, not the lesser deliberate indifference standard.  Even if Plaintiffs could

22

23  ————————————————

24  [1] Plaintiffs vaguely reference an alleged unconstitutional "pattern or practice" by the UC Defendants of cancelling or preventing conservative speakers from speaking on campus that was

25  litigated in *Young America's Foundation v. Napolitano et al*, No. 17-cv-02255-MMC (N.D. Cal.) ("*YAF*"), but this a red herring.  Plaintiffs fail to mention that the *YAF* court held that any claim for

26  prospective injunctive relief based on the alleged vague policy was *moot* because of the new, and constitutional Major Events Policy adopted by the University.  *Id.* (Dkt. 62, at 9.)   Indeed, that

27  case has since settled.  *Id.* (Dkt. 75.)  Moreover, Plaintiffs fail to explain why, even if the University were to cancel a conservative-speaker event on campus, *they* would suffer any

28  cognizable Article III injury, much less why this would satisfy *Lyons*.

REPLY I/S/O UC'S MOTION TO DISMISS THE SAC

1  somehow overcome these hurdles (which they cannot), Plaintiffs further fail to identify factual

2  allegations in the SAC that could support a freedom-of-association claim.

### 1.   UC Defendants are not liable for any failure to protect Plaintiffs from third-party violence or interference with Plaintiffs' rights

4  There is no dispute that the UC Defendants, as a general matter, owe no duty to protect

5  individuals like Plaintiffs from private violence or from interference by third parties with their

6  exercise of First Amendment rights.  *See Johnson*, 474 F.3d at 639; *Hernandez v. City of San Jose*,

7  897 F.3d 1125, 1133 (9th Cir. 2018) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489

8  U.S. 189, 197 (1989)); (Opp. at 7; MTD at 7-9 (citing cases)).  Plaintiffs also cannot dispute that

9  the UC Defendants had no duty to adopt any crowd-control plan or to take any steps to protect

10  Plaintiffs from the violent protestors that allegedly attacked Plaintiffs.[2]  Accordingly, the sole

11  question is whether Plaintiffs have alleged facts demonstrating that the UC Defendants took

12  "affirmative actions" that placed Plaintiffs in a worse position than if Defendants had not acted at

13  all, and whether the UC Defendants took these "affirmative actions" *with the intent to harm*

14  *Plaintiffs*.  Plaintiffs have failed to allege any such facts.

### 2.   Plaintiffs fail to allege facts sufficient to state a claim under the state-created danger exception

#### (a)   Plaintiffs do not allege any "affirmative conduct" by the UC Defendants

18  Plaintiffs do not dispute that they have abandoned the only theory of "affirmative conduct"

19  the Court approved in its prior order.  Plaintiffs are "*not* alleging that the original CMP providing

20  for … installation of the barricade system created the danger," but instead that Defendant

21  DeCoulode's order to vacate the plaza and leave the barricades "unmanned … left the Plaintiffs in

22  a more dangerous position than they would have been in had the initial plan not been discarded."

23

24  _____

25  [2] Plaintiffs' references to vagueness challenges under the First Amendment are inapposite.  Those challenges are appropriate where policies criminalize conduct or regulate individuals' ability to
26  exercise their First Amendment rights, such as criminal statutes or licensing ordinances, not crowd-control plans or tactical decisions made to alter such plans in the heat of the moment.  *See,*
27  *e.g.*, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1997) (vagueness concerns heightened when an enactment poses a risk of chilling speech or imposes potential criminal
28  liability).

REPLY I/S/O UC'S MOTION TO DISMISS THE SAC

1  (SAC ¶ 268, n.71 (emphasis added); *see* MTD Order at 12.)  Having conceded this essential point,

2  Plaintiffs *cannot* state a claim under the state-created danger exception.

3        Under *Johnson*, the relevant test is whether Plaintiffs were left in a more dangerous

4  position than if the UC Defendants had implemented *no* crowd-control plan at all, not whether a

5  different crowd-control plan or adhering to the original plan would have better protected Plaintiffs.

6  *See Johnson*, 474 F.3d at 641 ("[T]he fact that the police at one point had an operational plan that

7  might have more effectively controlled the crowds … does not mean that an alteration to this plan

8  was affirmative conduct that placed the [plaintiffs] in danger.").  If, as Plaintiffs imply, the test

9  were the latter, then the exception would swallow the rule:  it cannot be the case that merely

10  identifying a way in which a *different* course of action would have better protected Plaintiffs can

11  constitute an "affirmative action" when the general rule is that the UC Defendants owed Plaintiffs

12  *no protection at all.*  Accordingly, the *Johnson* court expressly rejected the same argument that

13  Plaintiffs make here.  As in *Johnson*, Plaintiffs assert the UC Defendants should be held "liable for

14  enhancing [plaintiffs'] danger … by abandoning the operational plan for crowd control … that

15  called for a large, highly visible police presence and aggressive law enforcement, and, instead,

16  implementing a more passive plan of staying on the perimeter of the crowd."  *Id.* at 638.

17        As in *Johnson*, Plaintiffs have not and cannot allege facts demonstrating that the alleged

18  tactical decisions by the UC Defendants to "discard[]" the pre-event crowd-control plan after

19  informing the public about the plan, issue "feckless" dispersal orders, or erect barriers that

20  "prevented an alternative safe exit point from the southern end of Sproul Plaza" once police

21  retreated from Sproul Plaza placed Plaintiffs in a worse position than if the UC Defendants had

22  implemented no plan at all.[3]  (SAC ¶¶ 173, 268.)  Plaintiffs fail to address the fact that the Court

23  previously rejected Plaintiffs' theory because Plaintiffs alleged that "protestors intended to enter

24  Sproul Plaza," and the order to vacate Sproul Plaza therefore "did not expose Plaintiffs 'to a

25  danger which he or she would not have otherwise faced.'"  MTD Order at 10-11 (quoting

26

27  [3] Plaintiffs do not dispute that all of the other allegations of wrongdoing by the UC Defendants

28  relate to things that they *failed* to do or decided *not to do*, not affirmative actions that could
potentially support a "state-created danger" exception.  (Opp. at 7-12; MTD at 3-4.)

1   *Hernandez*, 897 F.3d at 1133); *see also* SAC ¶ 89 (alleging that protestors made pre-event plans

2   "to assemble at Sproul Plaza for the purpose of engaging in an unlawful and violent riot,"

3   independently of any action or inaction by the UC Defendants).  Plaintiffs also outright ignore the

4   argument that Plaintiffs fail to allege that they "would have made it 'to safety'" had Defendant

5   DeCoulode not given the order to vacate Sproul Plaza.  *Hernandez*, 897 F.3d at 1135; (MTD at

6   11-12).  According to Plaintiffs, the violent protestors were *already in* Sproul Plaza lobbing small

7   bombs and tearing down the barricades *before* Plaintiffs entered the plaza.  (MTD at 11-12; SAC

8   ¶¶ 154-156, 205 (Jennings and Redelsheimer), 236 (Hatch).[4])  Plaintiffs therefore have

9   affirmatively pled that *they exposed themselves* to the dangers that they encountered.

10          Plaintiffs attempt to gloss over their failure to identify any specific "affirmative actions" by

11   asserting that the court should look at the totality of the circumstances.  But evaluating the

12   "totality of the circumstances" does not mean holding state officials liable for dangers that

13   individuals would have faced regardless of state action.  In *Penilla v. City of Huntington Park*, 115

14   F.3d 707, 710 (9th Cir. 1997), the court identified "affirmative *actions*" taken by the police, each

15   of which placed the decedent in a worse position than had they not acted at all.  (Emphasis added.)

16   The *Penilla* decedent would have received medical care had officers not cancelled the call to

17   paramedics and taken decedent from his porch where he might have received assistance.  *Id.*  In

18   *Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989), the court did not explicitly address the

19   "affirmative action" requirement but instead concluded that there was a triable issue of fact as to

20   whether the defendant officer had "stranded" the plaintiff in a high-crime area in the middle of the

21   night, "trigger[ing] a duty of the police to afford her some measure of peace and safety."[5]

22   Similarly, in *L.W. v. Grubbs*, 974 F.2d 119 120,, 122 (9th Cir. 1992), the court held that the

23   defendants "affirmatively created the dangerous situation which resulted in" the plaintiff's assault

24   by selecting a violent sex offender to work alone with the plaintiff and leading the plaintiff "to

25   _____

26   [4] Plaintiffs do not dispute that Fletcher cannot state a claim against the UC Defendants because he
     did not allege he entered Sproul Plaza and therefore he "was not affected by the barricades, or any
27   of the Defendants' conduct."  (MTD Order at 14; MTD at 12 n.4.)

28   [5] Plaintiffs misstate the facts of *Wood.*  (Opp. at 8.)  The plaintiff (Wood) was not the individual
     arrested (Bell), and the impounded car belonged to Bell.  879 F.2d at 590.

1  believe that she would not be required to work alone with violent sex offenders."   In *Munger v.*

2  *City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000), officers "affirmatively

3  ejected" the decedent into "subfreezing" temperatures and "prevented" him "from driving his

4  truck or reentering" the safety of the bar.  *Munger* therefore involved "[t]he decedent's involuntary

5  exposure to harm, as a result of a state actor's command."  *Johnson*, 474 F.3d at 640.  In each of

6  these cases, the defendants placed the plaintiffs in a worse position than they would have been had

7  defendants not acted at all.  As discussed *supra*, Plaintiffs have not and cannot make similar

8  allegations here.

9       Nor are Plaintiffs similarly situated to the plaintiffs in *Hernandez*, who alleged that they

10  "would have made it 'to safety' had the Officers not *affirmatively directed them into the crowd of*

11  *protestors*."  897 F.3d at 1135 (emphasis added).  It was this fact that satisfied the "affirmative

12  action" requirement:  had the officers not actively ordered the plaintiffs to exit into the mob of

13  protestors and prevented plaintiffs from taking available, safer routes, the plaintiffs would have

14  not been injured by the mob.  *Id.*; *see also Hernandez v. City of San Jose*, 241 F. Supp. 3d 959,

15  965, 973 (2017) ("[A] line of police officers allegedly forced" plaintiffs into crowd of protestors

16  *after* plaintiffs "attempted to turn [away] 'to safety.'").  Plaintiffs have not (and cannot) allege that

17  any UC Defendants or police officers affirmatively directed them into the violent mob in Sproul

18  Plaza and exposed them to a danger that they would not have otherwise faced—Plaintiffs' own

19  allegations demonstrate that they chose to enter the plaza *after* violence had already broken out

20  and police had already retreated from the plaza.  *See supra* at II.B.2.a.  It was therefore not "only a

21  possibility" that Plaintiffs would be harmed when they arrived at the event, it was an inevitability.

22  (Opp. at 12.)

23       Plaintiffs baldly assert for the first time in their Opposition that they too would have made

24  it to safety, but they fail to allege any facts in support of such a claim in the SAC.  That Plaintiffs

25  would have "made it to safety" if the police had not deviated from the crowd-control plan, stayed

26  in the plaza, and protected Plaintiffs from the violent protestors is irrelevant; the question is

27  whether the UC Defendants exposed Plaintiffs to a danger that they "otherwise would not have

28  faced," not whether the UC Defendants could have protected Plaintiffs.  *See Johnson*, 474 F.3d at

641.  As in *Johnson*, Plaintiffs fail to allege facts demonstrating that the UC Defendants "enhanced the dangers" that Plaintiffs "exposed themselves to by participating in the" Yiannopoulos event after a violent riot had already broken out.[6]  *Id.*

### (b)    Plaintiffs fail to allege the UC Defendants acted with the requisite mental state

Plaintiffs fail to respond to the argument that their amendments to the complaint require application of the purpose-to-harm standard, not the deliberate indifference standard.  (Opp. at 14; MTD at 12-14.)  Even if Plaintiffs had plausibly alleged "affirmative action" by specific UC Defendants (which they do not), Plaintiffs have again failed to allege that Defendants took those "affirmative actions" with a "*culpable mental state*."  *Hernandez*, 241 F. Supp. 3d at 969 (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (emphasis added); (MTD at 12-14).  Because Plaintiffs explicitly allege that the "affirmative acts" at issue were *not* part of the crowd-control plan and instead base their claims on the on-the-ground *tactical* decisions made to "deviate" from that plan, the applicable standard is the "purpose to harm" standard.  *See* SAC ¶¶ 134-36, 269, 289, 292; 268 n.71; *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008); *id.* at 1137 ("In *Lewis*, the Supreme Court … drew a distinction between situations that evolve in a time frame that permits the officer to deliberate before acting and those that escalate so quickly that the officer must make a snap judgment.").

Indeed, the cases Plaintiffs rely upon that apply the deliberate indifference standard demonstrate why it is inappropriate here.  For example, in *Hernandez*, the court applied the deliberate indifference standard because the plaintiffs alleged that "[a]s part of their crowd-control plan, the Officers" directed the plaintiffs into a violent mob.  897 F.3d at 1129; *see also MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009) (deliberate indifference standard appropriately applied where officers "hav[e] time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of

---

[6] Though the *Johnson* defendants had not publicized their crowd-control plan prior to the event, as Plaintiffs allege the UC Defendants did here, Plaintiffs again do not allege that *they actually saw* any of the press coverage they cite in the SAC.  There is no allegation that Plaintiffs actually *relied upon* any of the alleged representations regarding the University's crowd-control plan or the purported safety measures to be taken.

1  competing obligations" (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998))).  Having

2  disavowed their challenges to the pre-event crowd-control plan, Plaintiffs cannot apply the lesser

3  deliberate indifference standard to the "snap judgment[s]" alleged made by Defendant DeCoulode

4  and other unnamed UC Defendants' to abandon the deliberated-upon crowd-control plan and

5  procedures when "pandemonium" broke out in Sproul Plaza.

6        Applying the appropriate purpose-to-harm standard, Plaintiffs have not and cannot allege

7  facts demonstrating that the UC Defendants took any of the purported "affirmative acts" discussed

8  *supra* "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475

9  U.S. 312, 320-21 (1986) (citation omitted).  Nor can Plaintiffs rely upon vague assertions that the

10  UC Defendants were aware of the violence in the plaza and failed to then take affirmative steps to

11  protect Plaintiffs; this would eliminate the "affirmative action" requirement altogether by

12  divorcing the challenged conduct from the requisite mental state.  Even applying the more liberal

13  deliberate indifference standard, Plaintiffs fail to allege a single *fact* demonstrating that Defendant

14  DeCoulode or the UC Defendants vacated Sproul Plaza, left the barricades "unmanned," or issued

15  "feckless dispersal orders" with the specific knowledge that it posed an "unreasonable risk and

16  actually intend[ed] to expose [the plaintiffs] to such risks without regard to the consequences to

17  [the plaintiffs]." *Hernandez*, 897 F.3d at 1135 (quoting *Grubbs*, 92 F.3d at 899).  Plaintiffs

18  therefore cannot state a claim under the state-created danger exception.

19        **3.**     **Plaintiffs fail to plead a freedom-of-association claim**

20        As this Court previously concluded, under Ninth Circuit precedent, to state a freedom-of-

21  association claim, plaintiffs "must plead that the individual's actions imposed a "serious burden

22  upon, affect[ed] in a[ ] significant way, or substantially restrain[ed]" the plaintiffs' ability to

23  associate." *Mandel v. Bd. of Trustees of Cal. St. Univ.*, 2018 WL 1242067, at *10 (N.D. Cal. Mar.

24  9, 2018) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir.

25  2004)).  This accords with the general principle that government entities are not responsible for

26  protecting individuals from third-party interference with the exercise of First Amendment

27  freedoms.  It is only when the government entity *itself* interferes with or burdens a plaintiffs'

28  associational rights can a plaintiff state a claim.  Plaintiffs' Opposition fails to identify any facts

1   showing that the UC Defendants' affirmatively interfered with Plaintiffs' right to assemble.

2   Instead, Plaintiffs once again assert that third-parties interfered with their right to assemble, and

3   that the UC Defendants should have protected Plaintiffs from that interference.  This theory is

4   untenable as the UC Defendants owed no independent duty to Plaintiffs to protect them from

5   third-party interference.  *See supra* at II.B.1; (MTD at 7-9).  As Plaintiffs have failed to cure the

6   deficiency the Court identified in its prior order, this claim should be dismissed with prejudice.[7]

7           **C.      Plaintiffs' Claims Against the UC Defendants in Their Personal Capacities Must Be Dismissed**

8

9                     **1.      Plaintiffs do not allege facts sufficient to show that UC Defendants acted in their personal capacities**

10          The SAC lacks *any* factual allegations regarding any actions or decisions made by

11  Defendants Dirks, Christ, Sutton, and Greenwell.  Instead, the handful of references to "campus

12  leadership" and Defendant Dirks refer only to their alleged "aware[ness]" of the violent riot on the

13  night it took place, but there are no allegations that any of these Defendants took *any action* that

14  played any role in Plaintiffs' alleged injuries.  (*See* SAC ¶ 200); *Clark v. Cal. Dep't of Forestry &*

15  *Fire Prot.*, 212 F. Supp. 3d 808, 814-815 (N.D. Cal. 2016) (a plaintiff "is required to plead

16  specific facts regarding each individual Defendant's conduct sufficient to plausibly state a cause of

17  action against that Defendant individually").  Nor are the allegations with respect to Defendants

18  Yao, Harris, DeCoulode, and Williams remotely sufficient to support a finding that they acted in

19  their personal capacities, as none of Plaintiffs' allegations demonstrate that these specific

20  individuals took actions that resulted in any deprivation of Plaintiffs' rights.[8]  Plaintiffs' claims

21  against these individual Defendants must be dismissed, and they should be dismissed with

22  prejudice as Plaintiffs have already been afforded an opportunity to amend.

23

---

24  [7] Plaintiffs also apparently are abandoning the theory that the UC Defendants "coordinate and collude with the Riot Defendants" and "similar violent actors belonging to the same conspiratorial

25  groups … to engage in violent activity for the purpose and with the objective of squelching conservatives engaging in First Amendment activity on or around the UC Berkeley campus." SAC

26  ¶ 331.  Plaintiffs concede that they have failed to allege "specific facts to support the existence of the claimed conspiracy" between the UC Defendants and the Riot Defendants. *Burns v. Cty. of*

27  *King*, 883 F.2d 819, 821 (9th Cir. 1989); (MTD at 15-16).

28  [8] Plaintiffs cite SAC ¶¶ 90, 52, and 75-78.  (Opp. at 15-16.)  None of these allegations has anything to do with the above-named UC Defendants.

### 2. The UC Defendants are entitled to qualified immunity from damages claims

As stated in the Motion, "State officials are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity to damages claims against them in their personal capacities, courts ask: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional (or statutory) right; and (2) if so, *whether the right was clearly established in light of the specific context of the case*. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Supreme Court has recently emphasized the breadth of qualified immunity, holding that, to defeat a defendant's qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (*per curiam*). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *White*, 137 S. Ct. at 551).

Plaintiffs argue that the UC Defendants are not entitled to qualified immunity because "each individual Defendant holds an administrative position with the University under which the policies, practices, and procedures potentially giving rise to the First and Fourteenth Amendment claims were implemented." (Opp. at 17.) This argument demonstrates precisely why qualified immunity must apply here. That the "policies, practices, and procedures" "*potentially* giv[e] rise" to constitutional violations is just another way of saying that it was *not* clearly established that these alleged "policies, practices, and procedures" violated any constitutional rights. Plaintiffs cite *no authority* demonstrating that the UC Defendants' actions, "*in light of the specific context*," violated Plaintiffs' constitutional rights. *See, e.g.*, *Woods v. Moss*, 134 S. Ct. 2056, 2066-68 (2014) (because no case had held that protestors with differing viewpoints must be kept "at comparable locations at all times," defendants were entitled to qualified immunity (citation omitted)); *Kisela*, 138 S. Ct. at 1152 ("This Court has 'repeatedly told courts—and the Ninth

-11-                                                    Case No. 18-CV-00268-CW

1  Circuit in particular—not to define clearly established law at a high level of generality.'" (quoting

2  *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015))); *C.F. ex rel. Farnan v.*

3  *Capistrano Unified Sch. Dist.*, 654 F.3d 975, 987 (9th Cir. 2011) (affirming qualified immunity

4  and rejecting argument based on "overbroad proposition" that religious viewpoint discrimination

5  is unlawful).

6  　　　As alleged in the SAC, this was a fast-paced, escalating situation that presented competing

7  public safety considerations and the purpose-to-harm standard should therefore apply to the UC

8  Defendants' alleged conduct.  Even if the purpose-to-harm standard does not apply, that

9  conclusion was certainly not "clearly established" at the time of these events (nor is it now).

10  Defendants could more than reasonably have concluded that they had considerable discretion

11  about whether and how to respond to violence on the Berkeley campus, including the discretion to

12  take into account their own safety (as Plaintiffs acknowledge they did).  Qualified immunity gives

13  Defendants room to make such conclusions, and it bars Plaintiffs' personal-capacity damages

14  claims.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations omitted) (qualified

15  immunity "gives government officials breathing room to make reasonable but mistaken

16  judgments").

17  　　　**D.　　Plaintiffs Fail to State a Claim for Punitive Damages**

18  　　　Plaintiffs again fail to identify any factual allegations in the SAC demonstrating that

19  *specific* individual UC Defendants' conduct was "motivated by evil motive or intent, or . . .

20  involves reckless or callous indifference to the federally protected rights of [Plaintiffs]" as

21  required to support a claim for punitive damages under section 1983.  *Smith v. Wade*, 461 U.S. 30,

22  56 (1983); Cal. Civ. Code § 3294.  Plaintiffs refer generally to the "unconstitutional harms

23  inflicted" on them, but conclusory arguments that the UC Defendants acted with "reckless or

24  callous indifference" without any factual allegations that support such assertions are insufficient.

25  **III.　　CONCLUSION**

26  　　　The UC Defendants respectfully submit that all of Plaintiffs' claims against them should be

27  dismissed with prejudice.

28

1  DATED:  February 8, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUNGER, TOLLES & OLSON LLP
   BRADLEY S. PHILLIPS
   BRYAN H. HECKENLIVELY
   ELIZABETH A. KIM


By: _____*/s/ Bradley S. Phillips*_____
               BRADLEY S. PHILLIPS
Attorneys for Defendants Janet Napolitano, Nicholas B. Dirks, Carol T. Christ, Stephen C. Sutton, Joseph D. Greenwell, Margo Bennett, Alex Yao, Leroy Harris, Marc Decoulode, and Joey Williams

-13-

REPLY I/S/O UC'S MOTION TO DISMISS THE SAC