United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JENNINGS, et al., | No. 18-cv-00268-CW |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| JANET NAPOLITANO, et al., | |
| Defendants. | (Dkt Nos. 57 & 59) |

Before the Court are two motions to dismiss brought by
Defendants.  The first is a motion brought on behalf of
Defendants Janet Napolitano, President of the University of
California (UC) Regents; Nicholas Dirks, former Chancellor of UC
Berkeley (UCB); Carol Christ, current Chancellor of UCB; Stephen
Sutton, Interim Vice Chancellor of Student Affairs Division at
UCB; Joseph Greenwell, Associate Vice Chancellor for Student
Affairs and Dean of Students at UCB; Margo Bennett, Chief of
Police for the University of California Police Department (UCPD);
Alex Yao, Operations Division Captain for UCPD; Leroy Harris,
Patrol Lieutenant for UCPD; Marc DeCoulode, Services Unit
Lieutenant for UCPD; and Joey Williams, Patrol Lieutenant for
UCPD (collectively, the UCB Defendants) to dismiss the Second
Amended Complaint (SAC) filed by Plaintiffs Katrina Redelsheimer,
John Jennings, Trevor Hatch and Donald Fletcher.  Defendant Raha
Mirabdal, a private citizen who is alleged to have been at Sproul
Plaza at the time in question, is also moving to dismiss claims
alleged against her in the SAC.  Finding the matters appropriate
for resolution without oral argument and having reviewed the

papers and the record, the Court DENIES in part and GRANTS in part without leave to amend UCB Defendants' Motion to Dismiss Plaintiffs' SAC.  The Court also GRANTS Defendant Mirabdal's Motion to Dismiss Plaintiffs' SAC and grants leave to amend.

BACKGROUND

Unless otherwise noted, the factual background is taken from the SAC, which is assumed to be true for purposes of Defendants' motions to dismiss.  Docket No. 56 (SAC).

Plaintiffs are four individuals who had planned to attend an event featuring Milo Yiannopolous, a conservative gay media personality and political commentator.  The event was hosted at UCB by a registered student organization.  Plaintiffs are now bringing suit against UCB Defendants and private citizens Mirabdal and Ian Dabney Miller who were alleged to be rioters in attendance protesting Yiannopolous, along with Riot DOE Defendants.

UCB Defendants Napolitano and Bennett are sued in their official capacities only.  Defendant Dirk is sued in his individual capacity only.  The others (Sutton, Christ, Greenwell, Yao, Harris, DeCoulode and Williams) are sued in both their individual and official capacities.

In 2016 and 2017, Yiannopolous went on a speaking tour on college campuses.  SAC ¶ 64.  He was scheduled to appear at UCB on February 1, 2017.  Id. ¶ 1.  Prior to the scheduled UCB event, there were violent protests on three university campuses on Yiannopolous' tour.  Id. ¶ 68.  UCB Defendants were aware of the possibility of potential protestors at the Yiannopolous event. Prior to the event, Defendants Harris and Yao created a crowd

United States District Court
Northern District of California

1   control plan that included erecting barricades in Sproul Plaza

2   and increasing police presence, including adding Special Response

3   Teams (SRT) officers.  Id. ¶¶ 71, 108.

4       Plaintiffs allege that rioters were making plans to assemble

5   at Sproul Plaza with the purpose of engaging in unlawful and

6   violent riots.  Id. ¶ 89.  These included groups like By Any

7   Means Necessary (BAMN), which Defendants Mirabdal and Dabney

8   Miller are alleged to be a part of.  Id. ¶ 97.

9       On the day of the event, the crowd involving the protesters

10  and attendees at Sproul Plaza became violent.  Plaintiffs allege

11  that UCB Defendants' crowd control plan required police presence

12  in Sproul Plaza, and Defendant DeCoulode deviated from the plan

13  when he ordered SRT officers to vacate Sproul Plaza.  Id. ¶ 268.

14  Defendant DeCoulode ordered SRT officers to retreat into Martin

15  Luther King Center (MLK Center) and ordered the doors to be

16  locked.  Id.  The barricades that were erected in anticipation of

17  the riot along with the locked doors to MLK Center prevented

18  alternate routes of escape for attendees of the event including

19  Plaintiffs Jennings, Redelsheimer and Hatch who were in Sproul

20  Plaza.  Id. ¶¶ 129, 145-49.  Because they were trapped,

21  Plaintiffs suffered injuries from rioters.  Once Defendants

22  DeCoulode and Williams along with SRT officers were inside MLK

23  Center, a few officers rescued several victims.  Id. ¶ 161.

24  Defendant Williams ordered SRT officers to keep the door closed

25  and not rescue anyone else, allegedly stating, "Those people are

26  on their own."  Id. ¶ 164.  Defendant DeCoulode told SRT officers

27  that the attendees "deserved what they got," and added, "They put

28  themselves there.  I'm not worried about it."  Id. ¶ 275.

3

Plaintiffs allege that university administrators including Defendant Dirks were watching these events unfold in real time but continued to do nothing.  Id. ¶ 200.

On November 14, 2018, the Court granted UCB Defendants' motion to dismiss the First Amended Complaint (FAC), granting Plaintiffs leave to amend their § 1983 claims against UCB Defendants as to Plaintiffs' claim for injunctive relief against UCB Defendants in their official capacities and Plaintiffs' § 1983 claims pursuant to the First and Fourteenth Amendments against UCB Defendants in their individual capacities.  The Court otherwise dismissed the § 1983 claims against UCB Defendants in their official capacities without leave to amend because these claims were barred by the Eleventh Amendment.  Plaintiffs' FAC also alleged state claims of violating the Ralph and Bane Acts, battery, negligence, intentional infliction of emotional distress and false imprisonment against Defendants Mirabdal and Dabney Miller.  Defendants Mirabdal and Dabney Miller had filed answers to the FAC.  On December 19, 2018, Plaintiffs filed their SAC, adding allegations to bolster their § 1983 claims, and alleging the same state claims against Defendants Mirabdal and Dabney Miller.  Mirabdal now moves for the first time to dismiss all claims against her.  Defendant Dabney Miller has not moved to dismiss the claims against him and has filed an answer.  Docket No. 58.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state

United States District Court
Northern District of California

a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Twombly, 550 U.S. at 555.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061.  However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal

5

"without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). "Leave to amend may [] be denied for repeated failure[s] to cure deficiencies by previous amendment." Abagnin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

DISCUSSION

I.   UCB Defendants' Motion to Dismiss

UCB Defendants move to dismiss all claims against them. All four Plaintiffs have asserted § 1983 claims for purported violations of their due process rights under the Fourteenth Amendment (claim I) and their freedom of association right under the First and Fourteenth Amendments (claim III). The Court notes that Plaintiff Fletcher does not appear to join other Plaintiffs in opposing UCB Defendants' Motion to Dismiss and thus is not attempting to argue he has cured the deficiencies identified by the Court previously, so his claims against UCB Defendants are dismissed without leave to amend. Plaintiffs Jennings', Redelsheimer's and Hatch's claims against UCB Defendants are discussed below.

A.   Ex Parte Young Injunctive Relief Against UCB Defendants in Their Official Capacities

State officials sued in their official capacities are considered "arms of the State" and are immune under the Eleventh Amendment from suits brought in federal court because they are not "persons" subject to suit under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). However, there is an exception under Ex Parte Young, 209 U.S. 123 (1908), allowing for

injunctive relief against state officials sued in their official capacities.

The Court granted Plaintiffs leave to amend their § 1983 claim against UCB Defendants in their official capacities seeking injunctive relief if Plaintiffs could allege facts showing "there is a likelihood that [Plaintiffs] will be injured in a similar fashion again" stemming from any alleged actions by UCB Defendants.  Docket No. 53 (Order Granting UCB Defendants' Motion to Dismiss) (Order) at 7.  The Court otherwise dismissed Plaintiffs' § 1983 claims without leave to amend against UCB Defendants in their official capacities to the extent Plaintiffs were seeking damages.  Id.

Plaintiffs argue that their amended allegations are sufficient because standing for injunctive relief is relaxed in the First Amendment context.  As discussed below, Plaintiffs have failed to allege facts arising to a First Amendment violation by UCB Defendants; thus, any purported relaxing of standards pursuant to a First Amendment claim would be inapplicable here.[1]

Separately, Plaintiffs argue there is a likelihood of such harm occurring again because there is a likelihood of more conservative speakers at UCB pursuant to a settlement of another lawsuit and protesters would attend these speaking engagements

---

[1] Nor is Plaintiffs' cited authority appropriate here. Plaintiffs' cited authority relaxes the showing of injury-in-fact for standing purposes in the First Amendment context when the plaintiffs have met their burden of showing a likelihood of success.  Thus, irreparable harm from a First Amendment violation is presumed even if the plaintiffs cannot make such a showing. Here, as the Court explained in its prior Order, Plaintiffs had failed, and continue to fail, to show a likelihood of being harmed again in the same fashion.

United States District Court
Northern District of California

United States District Court
Northern District of California

and because UCB's Crowd Management Policy (CMP) manual continues to suggest using barricades for events.  SAC ¶ 382.  However, Plaintiffs' own theory of liability is premised, not on the barricades themselves, <u>see</u> <u>id.</u> ¶ 268, n.71, but on the theory that Defendants DeCoulode and Williams deviated from the crowd control plan created for the Yiannopolous event by ordering SRT officers to vacate Sproul Plaza instead of staying, and by locking themselves in MLK Center, despite knowing that the erected barricades would block an alternate exit, and thus they created the danger.  There are no factual allegations supporting the notion Plaintiffs will encounter these circumstances again.  Thus, Plaintiffs have failed to cure the deficiency identified by the Court despite an opportunity to do so; the Court GRANTS UCB Defendants' motion to dismiss the claim seeking injunctive relief against them (claim X) without leave to amend.

B.   Section 1983 Claims Against UCB Defendants in Their Individual Capacities

1.   Plaintiffs' Freedom of Association Claim

To state a claim for infringement of free assembly, "a plaintiff must [plead] that the [defendant] imposed a serious burden upon, or affected in a significant way, or substantially restrained the plaintiff's ability to associate."  <u>Mandel v. Bd. Of Trustees of California State Univ.</u>, 17-cv-3511-WHO, 2018 WL 1242067, at *10 (N.D. Cal. Mar. 9, 2018) (quoting <u>San Jose Christian Coll. v. City of Morgan Hill</u>, 360 F.3d 1024, 1033 (9th Cir. 2004)) (internal alteration marks omitted).  The Court dismissed Plaintiffs' freedom of association claim (claim III) with leave to amend, finding that Plaintiffs failed to plead

8

United States District Court
Northern District of California

1  "affirmative acts by UCB Defendants that interfered with

2  Plaintiffs' First Amendment right to associate."  Order at 15.

3  While Plaintiffs did amend their § 1983 First Amendment claim and

4  added allegations that UCB Defendants had colluded with Riot DOE

5  Defendants to encourage violent riots at conservative events to

6  suppress speech, they seem to have abandoned this theory and

7  failed to address it in their opposition.  Instead, Plaintiffs

8  argue again that their right to freely associate with one another

9  was impinged by UCB Defendants' purported "affirmative acts" of

10  failing to provide adequate protection.  However, this merely

11  rehashes the same argument raised in Plaintiffs' opposition to

12  the motion to dismiss the FAC and previously rejected by this

13  Court.  Plaintiffs have failed to plead how UCB Defendants

14  affirmatively interfered with their right to associate, as

15  opposed to merely failing to protect Plaintiffs "against the

16  actions of others."  Id.  Because Plaintiffs have failed to cure

17  the deficiencies identified by the Court despite the opportunity

18  to do so, the Court dismisses Plaintiffs' freedom of association

19  claim (claim III) without leave to amend.

20              2.   Plaintiffs' Due Process Claim

21      "[M]embers of the public have no constitutional right to sue

22  state actors who fail to protect them from harm inflicted by

23  third parties" unless a "special relationship" between the state

24  and the plaintiffs exists because the plaintiffs are within the

25  state actor's custody, or there is a danger created by the state.

26  Johnson v. Seattle, 474 F.3d 634, 639 (9th Cir. 2007).

27  Plaintiffs are alleging a state-created danger here.  To state a

28  claim under the state-created danger exception, a plaintiff must

1  allege that "an affirmative act by the [defendants] [left] the
2  plaintiff in a more dangerous position than the one in which they
3  found him."  Estate of Amos ex rel. Amos v. City of Page,
4  Arizona, 257 F.3d 1086, 1091 (9th Cir. 2001) (original emphasis
5  and citations omitted).

6                    a.   State-Created Danger
7       The Court dismissed Plaintiffs' § 1983 due process claim
8  with leave to amend, finding that Plaintiffs failed to allege
9  facts showing that Defendants placed Plaintiffs in a state-
10 created danger with deliberate indifference.  Specifically,
11 Plaintiffs did not allege any affirmative acts by UCB Defendants
12 that placed them in a more dangerous position than one in which
13 UCB Defendants found Plaintiffs, except possibly as to erecting
14 barricades that prevented alternate safety routes and locking
15 doors to MLK Center.  Order at 9-10.  The Court nevertheless
16 dismissed the claim because Plaintiffs failed to sufficiently
17 plead that Defendants Harris and Yao, who were alleged to have
18 ordered that the barricades be erected, were deliberately
19 indifferent.  Plaintiffs also failed to allege that locking the
20 doors to MLK Center prevented alternate safety routes and
21 therefore they failed to allege that Plaintiffs were in a worse
22 situation than if the doors were not locked.  Id.  Plaintiffs
23 appear to abandon the theory that Harris' and Yao's order for the
24 barricades created the danger.  See SAC ¶ 268, n.71.
25      Instead, Plaintiffs now allege that officers supervised by
26 Defendant DeCoulode made dispersal orders that aggravated the
27 crowd, and Defendant DeCoulode deviated from the crowd control
28 plan that required police presence, instead ordering SRT officers

10

to vacate Sproul Plaza.  Plaintiffs further allege that Defendant DeCoulode ordered that the doors to MLK Center be locked once the officers proceeded from Sproul Plaza into MLK Center, which blocked an alternate safety route.  Defendant Williams ordered that the doors remain locked despite observing the violence on the other side.  While ordering SRT officers to vacate Sproul Plaza and issuing dispersal orders do not arise to conduct that would have placed Plaintiffs in a more dangerous situation than they otherwise would have been in, the Court finds that Plaintiffs' other allegations sufficiently plead that Defendants DeCoulode and Williams created a danger by locking themselves in MLK Center which Plaintiffs now sufficiently allege blocked them from safety in the building.

Plaintiffs lastly argue that the university administrator UCB Defendants should also be held liable for this state-created danger because they were alleged to have monitored the events in real time and were "principally involved in policy determinations."  See SAC ¶ 200.  First, the SAC only alleges that Defendant Dirks was present, and does not specify any other UCB Defendants were present, to support any claims as to the other university administrator UCB Defendants (Christ, Sutton and Greenwell).  While Plaintiffs allege that university administrators were watching, they have not alleged facts showing how university administrator UCB Defendants contributed to the danger allegedly created by DeCoulode and Williams.

Plaintiffs sufficiently plead that affirmative actions taken by Defendants DeCoulode and Williams placed Plaintiffs in danger. Plaintiffs have failed to identify such affirmative actions by

United States District Court
Northern District of California

1  any other UCB Defendants.

2           b.    Requisite Mental State

3       In addition to alleging that defendants took affirmative

4  actions to create a danger, plaintiffs must also show that

5  defendants were deliberately indifferent.  Patel v. Kent School

6  Dist., 648 F.3d 965, 974 (9th Cir. 2011).  "Deliberate

7  indifference is 'a stringent standard of fault, requiring proof

8  that a[n] . . . actor disregarded a known or obvious consequence

9  of his action.'"  Id. (citing Bryan Cnty. v. Brown, 520 U.S. 397,

10 410 (1997)).  Because only Defendants DeCoulode and Williams were

11 identified as allegedly responsible for a state-created danger,

12 the Court will analyze whether Plaintiffs allege they had the

13 requisite intent.

14      Defendants argue that the purpose-to-harm standard, whereby

15 Plaintiffs must show that Defendants "act[ed] with a purpose to

16 harm unrelated to legitimate law enforcement objectives," M.H. v.

17 Cnty. of Alameda, 62 F. Supp. 3d 1049, 1095 (N.D. Cal. 2014),

18 should apply to Defendants DeCoulode and Williams who were on the

19 ground making tactical decisions at the time, whereas the

20 deliberate indifference standard should apply to the other UCB

21 Defendants charged with preliminary planning.

22      The Court finds that because Plaintiffs sufficiently plead

23 that Defendants DeCoulode and Williams had the requisite intent

24 under either standard, it need not decide which standard should

25 apply to DeCoulode's and Williams' actions.  Plaintiffs plead

26 that DeCoulode ordered SRT officers to retreat to MLK Center and

27 Williams ordered them to keep the doors to MLK Center locked,

28 preventing a viable alternate exit.  Viewing all of the facts in

12

United States District Court
Northern District of California

the light most favorable to Plaintiffs, keeping the doors locked, despite seeing individuals including Plaintiffs being injured due to the officers' actions raises an inference that these actions were taken with a purpose to harm for reasons unrelated to legitimate law enforcement objectives.  Plaintiffs plead that Williams and DeCoulode made statements that, construed in the light most favorable to Plaintiffs, raise a reasonable inference that their intent was to harm attendees.  For example, Defendant Williams allegedly stated, "Those people are on their own," after ordering SRT officers to stop saving attendees and stop allowing them into MLK Center.  SAC ¶ 164.  Similarly, Defendant DeCoulode allegedly said that attendees "deserved what they got."  Id. ¶ 275.  See e.g., Porter v. Osborn, 546 F.3d 1131, 1140-41 (9th Cir. 2008) (noting that the purpose-to-harm standard could be met if an officer purportedly used force "meant only to 'teach him a lesson' or to 'get even'").

C.   Qualified Immunity

In order to determine whether a defendant is entitled to qualified immunity under § 1983, Hernandez v. City of San Jose (Hernandez II) holds, "The Court asks, in the order it chooses, (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct."  897 F.3d 1125, 1132 (9th Cir. 2018).  It is Plaintiffs' burden to identify a case that would put Defendants on notice in this case that their particular conduct was unlawful.  Sharp v. Cnty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017).

As stated above, the Court finds that Plaintiffs

United States District Court
Northern District of California

1   sufficiently plead facts showing Defendants DeCoulode and

2   Williams violated Plaintiffs Jennings', Redelsheimer's and

3   Hatch's due process rights under the Fourteenth Amendment.  The

4   next step requires the Court to determine whether the right was

5   clearly established.  Plaintiffs point to Hernandez II, which is

6   instructive.  In Hernandez II, the defendants were at a rally for

7   then-candidate Donald Trump which turned violent.  The district

8   court in Hernandez I found that the defendants created a danger

9   when they continued to direct rally attendees in a certain

10  direction despite knowing there were violent counter-protesters

11  in that direction, as opposed to letting attendees walk in a

12  different direction.  Hernandez II, 897 F.3d at 1130.  The Ninth

13  Circuit in Hernandez II affirmed the district court's finding

14  that the defendants were not entitled to qualified immunity

15  because Johnson, 474 F.3d at 634, a case involving police conduct

16  during a weekend-long event that became increasingly violent over

17  its course, "clearly establishes the state-created danger

18  doctrine applies to the crowd-control context."  Id. at 1138.  In

19  applying Johnson, Hernandez II found the violation of attendees'

20  due process right was "obvious" based on allegations that the

21  defendants shepherded attendees into a violent mob even while

22  witnessing the violence firsthand.  Id. at 1138-39.

23        Similarly, Johnson placed Defendants DeCoulode and Williams

24  on notice of the state-created danger doctrine in a crowd control

25  context here.  As alleged, it was obvious that once Defendants

26  DeCoulode and Williams ordered SRT officers to withdraw from

27  Sproul Plaza and lock themselves in MLK Center, they could see

28  that these actions in combination with the barricades blocking

14

possible exits, placed Plaintiffs and other attendees in danger
of violence because they did not have alternate means of escape.
This is sufficient to raise a reasonable inference that
Plaintiffs' due process rights were violated, and that these
rights were clearly established.  However, Defendants are not
barred from raising qualified immunity again as the evidentiary
record is further developed.  Morley v. Walker, 175 F.3d 756, 761
(9th Cir. 1999) (determinations of qualified immunity are better
suited for summary judgment where "those allegations must be
supported" as opposed to a motion to dismiss where all factual
allegations must be regarded as true).

    D.   Punitive Damages

"In § 1983 cases, punitive damages [against government
officials in their individual capacities] are recoverable 'when
the defendant's conduct is shown to be motivated by evil motive
or intent, or when it involves reckless or callous indifference
to the federally protected rights of others.'" Knapps v. City of
Oakland, 647 F. Supp. 2d 1129, 1171 (N.D. Cal. 2009) (quoting
Smith v. Wade, 461 U.S. 30, 56 (1983)).  Section 1983 punitive
damages are also available if the defendant's conduct includes
"malicious, wanton, or oppressive acts or omissions." Dang v.
Cross, 422 F.3d 800, 807 (9th Cir. 2005).

    Here, Plaintiffs sufficiently allege that Defendants
DeCoulode and Williams acted with a purpose to harm.  It follows
that these allegations are sufficient to plead "reckless or
callous indifference."

    For the foregoing reasons, the Court DENIES UCB Defendants'
Motion to Dismiss the Fourteenth Amendment claim against

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Defendants DeCoulode and Williams in their individual capacities,
2  and the punitive damages claim to the extent this relies on the
3  Fourteenth Amendment claim as alleged by Plaintiffs Jennings,
4  Redelsheimer and Hatch.  Because Plaintiffs have failed to cure
5  the other deficiencies, the Court GRANTS UCB Defendants' motion
6  as to the other claims and other UCB Defendants, without leave to
7  amend.

8  II.  Defendant Mirabdal's Motion to Dismiss

9       Defendant Mirabdal moves to dismiss Plaintiffs' claims
10 against her.  All four Plaintiffs asserted state law claims of
11 violations of the Ralph Act (claim IV) and the Bane Act (claim
12 V).  Separately, Plaintiffs Jennings, Redelsheimer and Hatch
13 allege state law claims of civil battery and conspiracy (claim
14 VI), negligence (claim VII), intentional infliction of emotional
15 distress (claim VIII) and false imprisonment (claim IX) against
16 Mirabdal.

17      Mirabdal argues that Plaintiffs have failed to plead facts
18 identifying her as an assailant of any of them; rather,
19 Plaintiffs are merely arguing Mirabdal is vicariously liable for
20 the acts of the other purported joint tortfeasors who assaulted
21 Plaintiffs.

22      In reviewing the SAC, the Court identified the specific
23 allegations against Mirabdal as follows: (i) on information and
24 belief, Mirabdal is part of BAMN, an alleged left-wing militant
25 group, SAC ¶¶ 97, 92; (ii) Mirabdal "participated in, abetted,
26 encouraged, and aided the violent battery upon Plaintiffs
27 Jennings and Redelsheimer," id. ¶ 218; (iii) "Mirabdal assaulted
28 Plaintiff Jennings by attempting to batter him after he had been

16

beaten unconscious and was lying defenseless on the ground," <u>id.</u>
¶ 219; and, (iv) "Mirabdal is jointly and severally liable with
all concurrent joint tortfeasors for each and every one of the
injuries suffered by Plaintiffs Jennings and Redelsheimer," <u>id.</u> ¶
220.  All of Plaintiffs' allegations against Mirabdal are merely
conclusory and unsupported by any factual allegations.[2]
Plaintiffs have failed to plead facts against Defendant Mirabdal
specifically as to any of the elements of the state law claims
sufficient to survive a motion to dismiss.

The actions of other rioters cannot be imputed to Mirabdal
here.  Plaintiffs argue that the allegations against Riot DOE
Defendants include Mirabdal and, thus, their allegations should
survive the pleading stage.  However, aside from the claim of
conspiracy to batter, Plaintiffs have not identified how Mirabdal
could be vicariously liable for the acts of others by merely
being at the same place as the other alleged rioters.  <u>See. e.g.</u>,
<u>Workman v. City of San Diego</u>, 267 Cal. App. 2d 36, 38-40 (1968)
(discussing various legal doctrines for imputing negligence from
one party to another).  Nor is Plaintiffs' conspiracy claim any
more meritorious.  Any purported conspiracy requires "proof that
the defendant and another person had the specific intent to agree
or conspire to commit an offense, as well as the specific intent
to commit the elements of that offense, together with proof of
the commission of an overt act by one or more of the parties to

---

[2] These conclusory allegations only purport to allege actions taken against Plaintiffs Jennings and Redelsheimer.  Thus, Plaintiffs Fletcher's and Hatch's claims against Mirabdal separately fail because they have failed to make any allegations against Mirabdal specifically, conclusory or otherwise.

1  such agreement in furtherance of the conspiracy." In re Y.R.,

2  226 Cal. App. 4th 1114, 1121 (2014).  Plaintiffs argue that they

3  have alleged Mirabdal is a co-conspirator with other BAMN members

4  to cause harm to Plaintiffs.  However, putting aside the

5  conclusory assertion unsupported by any facts to show Mirabdal

6  was a BAMN member or that there was any agreement among BAMN

7  members, even under Plaintiffs' own theory, Plaintiffs have not

8  alleged that any BAMN members battered or assaulted Plaintiffs.

9  Plaintiffs only allege that various Riot DOE Defendants battered

10  and assaulted them and that numerous purported liberal militant

11  groups were part of this riot.  See SAC ¶¶ 90-93 (noting

12  "[v]arious left-wing militant political groups, some organized

13  and some decentralized" included "Berkeley Antifa," "It's Going

14  Down," and "Refuse Fascism" along with BAMN).  Thus, Plaintiffs

15  have failed to allege that Mirabdal was a part of BAMN or had any

16  intent to conspire with other BAMN members to assault and batter

17  Plaintiffs.  Even if they were able to sufficiently allege such a

18  conspiracy between Mirabdal and BAMN members, Plaintiffs failed

19  to allege non-conclusory facts that any BAMN members (as opposed

20  to other rioters) actually committed any overt act against

21  Plaintiffs.

22     In their Opposition, Plaintiffs include a screenshot

23  purporting to depict Mirabdal "in the middle of the pack

24  attacking Plaintiff [Jennings]."  Docket No. 63 (Plaintiffs'

25  Opposition to Mirabdal's Motion to Dismiss) at 3.  However, the

26  screenshot was not referred to in the SAC, nor did Plaintiffs

27  request judicial notice of it.  Lee v. City of Los Angeles, 250

28  F.3d 668, 688-89 (9th Cir. 2001) ("[A] district court may not

United States District Court
Northern District of California

consider any material beyond the pleadings in ruling on a Rule
12(b)(6) motion" except when the authenticity of the documents is
not contested or when a court takes judicial notice as a matter
of public record).  Thus, the screenshot is not incorporated for
purposes of assessing Plaintiffs' allegations.  Furthermore, even
if the screenshot was considered, at most, it depicts Mirabdal
among the rioters.  It does not actually appear to depict
Mirabdal battering any of the Plaintiffs.  See Opp. to Mirabdal
Mot. to Dismiss at 3.

Because this is Mirabdal's first motion to dismiss, and
because it is not clear that amendment would be futile, the Court
GRANTS Mirabdal's motion to dismiss and grants Plaintiffs leave
to amend their claims against her to remedy these deficiencies if
they can truthfully do so.

CONCLUSION

For the foregoing reasons, the Court hereby rules as
follows:

As to UCB Defendants' motion to dismiss, the Court DENIES it
against Defendants DeCoulode and Williams in their individual
capacities as to Plaintiffs Jennings', Redelsheimer's and Hatch's
due process claim under the Fourteenth Amendment (claim I), and
GRANTS it as to the rest of the claims (claim I with regard to
the other UCB Defendants, claims III and X as to all UCB
Defendants, and claims I and X as to Fletcher against all UCB
Defendants), without leave to amend.

The Court GRANTS Mirabdal's motion to dismiss in its
entirety (claims IV, V, VI, VII, VIII and IX) with leave to
amend.  Plaintiffs shall have twenty-one days to file their Third

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Amended Complaint if they can truthfully cure the defects

2   addressed in this Order as to the claims against Mirabdal.

3   Mirabdal may choose to file her answer or motion to dismiss no

4   later than April 22, 2019.  If Mirabdal files a motion to

5   dismiss, Plaintiffs shall file their response no later than May

6   6, 2019.  Mirabdal may file her reply no later than May 13, 2019.

7   The matter will be decided on the papers unless the Court deems

8   oral argument necessary.

9

10        IT IS SO ORDERED.

11  Dated: March 12, 2019

12                                          _____
                                            CLAUDIA WILKEN
13                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28